### FOSTER v. COMMISSIONER OF INTERNAL REVENUE.
### No. 3472.

Circuit Court of Appeals, First Circuit.

May 14, 1940.

L. Karlton Mosteller, of Washington, D. C., for petitioner.

W. Croft Jennings, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and John A. Gage, Sp. Assts. to Atty. Gen., on the brief), for the Commissioner.

Before MAGRUDER and MAHONEY, Circuit Judges, and PETERS, District Judge.

MAHONEY, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals, and relates to the income tax liability of the petitioner for the calendar year 1934. The Board of Tax Appeals decided that there is a deficiency in income tax for the year 1934 in the amount of $33,126.78. Previously, the Commissioner of Internal Revenue had determined a deficiency for said year in the amount of $34,620.66, and thereafter the petitioner filed with said United States Board of Tax Appeals his petition for redetermination, a decision as above stated being entered following a hearing on said petition.

The petitioner claims a deduction from income on account of a loss sustained with respect to a certain stock interest owned by him in the Exchange National Bank, Tulsa, Oklahoma, on the ground that such stock allegedly became worthless in the year 1934. The Commissioner of Internal Revenue, on the other hand, determined and now maintains that said stock became worthless in 1933, and, accordingly, in his notice to petitioner determined an overassessment for the year 1933, and a deficiency for the year 1934. The parties differ only as to whether the stock became worthless in 1933 or in 1934.

The statute and regulations involved are as follows:

Revenue Act of 1934, c. 277, 48 Stat. 680, 26 U.S.C.A. Int.Rev.Code, § 23:

"Sec. 23. Deductions from gross income.

"In computing net income there shall be allowed as deductions:

\* \* \* \* \* \*

"(e) Losses by individuals. In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

"(1) if incurred in trade or business; or

"(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; or \* \* \*"

Treasury Regulations 86, promulgated under the Revenue Act of 1934: "Art. 23 (e)-4. Shrinkage in value of stocks.—A person possessing stock of a corporation can not deduct from gross income any amount claimed as a loss merely on account of shrinkage in value of such stock through fluctuation. of the market or otherwise. The loss allowable in such cases is that actually suffered when the stock is disposed of. If stock of a corporation becomes worthless, its cost or other basis as determined and adjusted under section 113 is deductible by the owner for the taxable year in which the stock became worthless, provided a satisfactory showing is made of its worthlessness. \* \* \*"

It appears that the Exchange National Bank, Tulsa, Oklahoma, was organized in 1910 under the National Banking Laws, and that thereafter it organized the Ex-

change Trust Company and the Exchange National Company. These two latter companies were corporations organized under the laws of the State of Oklahoma, and the Exchange National Bank operated them as investment affiliates. Between the years 1918 to 1930, the petitioner purchased 478 shares of the capital stock of the Exchange National Bank. These 478 shares cost the petitioner $55,993, and entitled him to a beneficial interest in common with other stockholders in a pro rata amount of the capital stock of the Exchange Trust Company and the Exchange National Company. Of the $55,993 paid by the petitioner, $37,884.01 represents the cost of his interest in the Exchange National Bank, and $18,108.99 represents the cost of his interest in the two affiliates. For about two weeks prior to March 14, 1933, the Exchange National Bank was closed, first on account of a bank holiday declared by the State of Oklahoma, and then on account of the national bank holiday declared effective March 6, 1933. On March 14, 1933, however, the said Exchange National Bank reopened, without any limitations on its activities and it continued to do business to April 24, 1933, inclusive.

On or about April 23, 1933, the National Bank of Tulsa, Oklahoma, was organized under the National Banking Laws for the purpose of taking over the business of the Exchange National Bank. On April 24, 1933, the National Bank of Tulsa purchased from the Exchange National Bank certain assets having a book value of $8,590,117.52. At the same time the National Bank of Tulsa also assumed all the liabilities of the Exchange National Bank amounting to $28,030,790.59, and the Exchange National Bank gave to the National Bank of Tulsa two of its notes, each maturing in two years. One of these notes, designated as No. 1, was for $6,241,812.31, and the other note, designated as No. 2, was for $13,198,860.76, making a total for the two notes of $19,440,673.07. The total amount of these two notes represented the difference between the book value of the assets transferred to the National Bank of Tulsa and the liabilities assumed by it. Specific assets were pledged as collateral security for each note and the total assets of the Exchange National Bank, having a book value of $22,128,478.46, were pledged as security for the payment of both notes. Also pledged for the payment of these two

notes were certain assets charged off prior to April 24, 1933, amounting to about $3,400,000. On April 25, 1933, the National Bank of Tulsa began business in the same banking rooms and with the same personnel theretofore used and employed by the Exchange National Bank. The maturity date of the notes was subsequently extended for two-year periods to April 24, 1938. The individual stockholders of the Exchange National Bank received nothing as the result of the transfer of the assets to the National Bank of Tulsa, but, based on book value, the stockholders of said Exchange National Bank did have on April 24, 1933, exclusively of assets previously charged off, an equity of $2,687,805.39.

On or about April 25, 1933, the Exchange National Bank commenced the liquidation of its assets through a liquidating committee. This committee had power to make final decisions for the Exchange National Bank regarding liquidating matters, subject, however, to the approval of the executive committee of the National Bank of Tulsa. The liquidation of the Exchange National Bank was caused by financial difficulties of the Exchange Trust Company and the Exchange National Company, and loss of confidence in the Exchange National Bank due to heavy withdrawal of deposits. At the time of commencing the process of liquidation, all of the assets of the Exchange National Bank had been, as above indicated, either transferred to the National Bank of Tulsa or pledged as security for the two notes. All liabilities had been assumed by the new bank, and the Exchange National Bank ceased to function except for the purpose of liquidating its affairs. Whether or not the stockholders of the Exchange National Bank would receive anything by way of distribution depended upon whether there would be realized from the assets an amount in excess of its indebtedness to the National Bank of Tulsa. The value of these assets in 1933 and 1934, therefore, became a material issue, as excess of liabilities over assets, properly valued, is fundamentally what establishes worthlessness of stock. See Darling v. Commissioner, 4 Cir., 49 F.2d 111, certiorari denied, 283 U.S. 866, 51 S.Ct. 657, 75 L.Ed. 1470.

After hearing the petition for redetermination, the Board of Tax Appeals decided that upon a consideration of all the

evidence, the petitioner had failed to prove that the stock of the Exchange National Bank became worthless in 1934 for income tax deduction purposes, and accordingly found no error in the respondent's action in determining petitioner's loss as one sustained in 1933.

The question is, was there substantial evidence before the Board to support the findings of fact made, and was the correct rule of law applied to the facts found? One of the witnesses appearing before the Board for the petitioner was W. A. Brownlee, a man of considerable banking experience, and who had served in several executive positions in the Exchange National Bank. Mr. Brownlee, after organization of the National Bank of Tulsa, became affiliated with that institution, and also became secretary of the liquidating committee of the Exchange National Bank. Mr. Brownlee testified that the value of the assets of the Exchange National Bank exceeded its liabilities by from $200,000 to $350,000 on April 25, 1933, and from $300,000 to $500,000 at the close of the year. This witness also testified that the liabilities exceeded the value of the assets by at least $250,000 on and after December 31, 1934. Another witness testifying at the Board hearing in the interest of the petitioner was Albert H. Rogers. This witness became a director and a member of the executive committee of the National Bank of Tulsa shortly after its organization. Mr. Rogers testified that during the early part of the existence of the National Bank of Tulsa, the assets of the Exchange National Bank had a value of $500,000 in excess of its liabilities, and that at the close of the calendar year 1933, it was his opinion that the value of the assets of the Exchange National Bank was sufficient to enable it to discharge its liabilities and leave an excess value of somewhere between $600,000 and $800,000. Mr. Rogers also testified that he formed an opinion in the early part of August, 1934, that the value of these assets was insufficient to enable the Exchange National Bank to pay its liabilities to the National Bank of Tulsa by the sum of $500,000, and that as the year 1934 drew to a close he did not change his opinion.

Appearing as a witness for the respondent at the Board hearing was W. H. Donahue, a national bank examiner. Mr. Donahue testified that he had been in the banking business in Oklahoma from 1908 to 1925, and had been a national bank examiner in the Tenth Federal Reserve District since 1925. He testified, that in 1933, as a national bank examiner, he, with assistants, made an examination of the National Bank of Tulsa, this examination starting on August 31 and being concluded on September 26th. In the course of this examination, Mr. Donahue, with the assistance of his subordinates, examined each asset of the Exchange National Bank. This was done for the purpose of determining the value of that bank's outstanding notes held by the National Bank of Tulsa, as these notes were assets of the National Bank of Tulsa. Mr. Donahue testified that as of the day of beginning his examination the total assets of the Exchange National Bank amounted, according to book value, to the sum of $17,806,942.62, and that the liquidating obligations of the said bank were made up of the two notes, the total of which then amounted to $14,678,984.52. He testified that in respect to the assets he estimated a loss of $4,718,675.38. In the course of his appraisal and examination, among other things, he consulted with the officers of the bank and the members of the executive committee with respect to certain valuations decided upon by him, and his report reflected in the main, he thought, a general opinion as to the value of the assets. Among the persons with whom Mr. Donahue consulted during the course of his examination were Mr. Brownlee and Mr. Rogers.

The testimony of Mr. Donahue relating to figures was from notes and not from his actual report as a bank examiner. It appears by petitioner's Exhibit 17, which was prepared from the bank examiner's reports, that, on the date of the examination, the book value of the said assets amounted to $17,604,141.55; that the note liability of the Exchange National Bank to the National Bank of Tulsa on said date amounted to $14,678,984.52; and that the loss estimate amounted to $4,718,675.38; leaving a deficit of $1,793,518.25. The Board in its opinion stated that on August 31, 1933, the Exchange National Bank had assets of a book value of $17,604,141.55 and the aggregate principal amount of its notes held by the National Bank of Tulsa had been reduced to $14,678,984.52.

The petitioner stresses the fact that the value of the book assets of the Exchange National Bank as testified to by Mr. Donahue is not the same as that ap-

pearing in petitioner's Exhibit 17 and in the opinion of the Board of Tax Appeals. This difference does not lessen the credence which is to be given to the testimony of Mr. Donahue. Both his testimony and the figure set forth in Exhibit 17, which was the figure accepted by the Board, showed that the assets amounted to less than the liabilities. After setting forth the details of his examination, Mr. Donahue in his direct examination was asked the following question by counsel for the respondent: "Q. Mr. Donahue, based on your examination, did you have any opinion as to the value of the stock of the Exchange National Bank?" Before being permitted to answer the question, objection was made on the ground that the witness had not yet been qualified to answer that question, but the objection was withdrawn. As the record stands, the witness was qualified to answer the question. He then answered the question in the affirmative. Later he was questioned by counsel for the respondent as follows: "Q. What is your opinion, Mr. Donahue, as to the value of the Exchange National Bank stock?" And the witness answered: "My opinion at that time was that the stock was worthless." And later he answered: "I would say the stock became worthless in 1933." In cross-examination he was asked: "Q. Well, now, back to the question as originally put to you a moment ago. What date in 1933 did you fix when the stock in the Exchange National Bank became worthless?" And he answered: "I would have to say, from the record, about the date of my examination. However, my mind would say it was probably some time prior to that, probably as far back as the moratorium or at least the liquidation of the Exchange National Bank, when it was placed in liquidation."

Counsel for petitioner places much stress on one answer made by Mr. Donahue in being cross-examined as to the date when the stock became worthless when he replied: "I would think that some time between the moratorium and the date of this examination; I will not attempt to allocate it to any particular month or year, because I don't believe I could." This answer appears at first a bit confusing, but it by no means detracts from Mr. Donahue's opinion that at the time of his examination in September, 1933, the stock was worthless, and simply means that it may have become worthless some time prior to the examination. As a matter of fact, the

continued cross-examination bears this out, the witness being questioned as follows: "Q. And you think the fact that the stock was worthless in 1933 was influenced by developments which took place in March 1933?", and he answered: "About the time and following the moratorium, yes; up to the time of this examination." The opinion of Donahue was that at the time when he made his examination the stock was worthless, and had probably become so some time prior to that time.

The Board had before it certain stipulated facts, the inference to be drawn from the fact that the Exchange National Bank was permitted to reopen after the national bank holiday, and the testimony of Brownlee, Rogers and Donahue. As above indicated Brownlee and Rogers testified to the effect that the stock became worthless in 1934, while Donahue expressed the opinion that the stock was worthless at the time of his examination in 1933. The opinions of the witnesses were conflicting, and in the face of these conflicting opinions, the Board concluded that the petitioner had failed to prove that the stock became worthless in 1934. Donahue had made a detailed appraisal and examination of the assets and liabilities involved, and his testimony constituted substantial evidence.

The decision of the Board of Tax Appeals must prevail if it is supported by substantial evidence. Phillips v. Commissioner, 283 U.S. 589, 600, 51 S.Ct. 608, 75 L.Ed. 1289; Tracy v. Commissioner of Internal Revenue, 6 Cir., 53 F.2d 575, 578. On a hearing before the Board on a petition for redetermination, the ruling of the Commissioner of Internal Revenue "has the support of a presumption of correctness, and the petitioner has the burden of proving it to be wrong". Welch v. Helvering, 290 U. S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212. In the instant case, the petitioner had the burden before the Board to show that the stock became worthless in 1934. The Board found that the petitioner had failed to prove that the stock became worthless in 1934 for income tax purposes, and the testimony of Donahue constituted substantial evidence to support the finding that it became worthless in 1933. Hence there was substantial .evidence to support the Board's finding of fact that the petitioner did not prove that the stock became worthless in 1934, and the correct rule of law was applied to the facts found.

Following the filing of the Board's opinion and decision, the petitioner filed a motion with the Board to vacate and set aside its opinion and decision and for rehearing. This motion was denied, and petitioner charges that the denial of said motion was an abuse of discretion. The Board's memorandum opinion was entered September 22, 1938, and the decision was entered December 5, 1938. The motion was filed on February 11, 1939. Rule 19 of the Rules of Practice of the Board of Tax Appeals provides in part as follows:

"Motions for rehearing, reconsideration, further hearing, and the like, to be considered timely, shall be made within 30 days after promulgation or entry of the report.

"Motions to vacate, correct, or revise a decision of the Board, to be considered timely, shall be made within 30 days after entry of the decision."

The motion, therefore, was not timely under the Board's rules. The evidence relied upon in support of the motion related to a telegram dated March 24, 1934, from the Deputy Comptroller of the Currency to the National Bank of Tulsa. Viewed in its most favorable light, this evidence would only be the opinion of another person. The granting or refusing of a rehearing is within the sound discretion of the Board. Bankers' Coal Co. v. Burnet, 287 U.S. 308, 53 S.Ct. 150, 77 L.Ed. 325; Freeman-Hampton Oil Corporation v. Commissioner of Internal Revenue, 5 Cir., 65 F.2d 456. The record in this case does not disclose an abuse of discretion.

The decision of the Board of Tax Appeals is affirmed.