## SUMMIT DRILLING CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

No. 3391.

Circuit Court of Appeals, Tenth Circuit.

March 10, 1947.

704

John M. Winters, Jr., of Tulsa Okl. (Roger S. Randolph and Conner, Winters, Lee, & Randolph, all of Tulsa, Okl., on the brief), for petitioner.

Newton K. Fox, Sp. Asst. to Atty. Gen. (Sewall Key, Acting Asst. Atty. Gen., and A. F. Prescott, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

Exchange National Bank of Tulsa, Oklahoma, hereinafter referred to as Exchange, was engaged in the banking business from 1910 to 1933. It was closed for a period of approximately two weeks in March, 1933, first on account of a moratorium declared by the State of Oklahoma and then on account of the national bank holiday. On March 14th, it reopened without restrictions upon its regular banking activities. The National Bank of Tulsa, hereinafter referred to as National, was organized on or about April 23, 1933, for the express purpose of taking over the business of Exchange. On April 24th, National purchased from Exchange certain assets of Exchange having a book value of $8,590,117.52, and assumed all of the liabilities of Exchange, aggregating $28,030,- 790.59. Exchange executed to National two promissory notes aggregating $19,440,- 673.07, pledged all of its assets to secure payment of the notes, and went out of business. National commenced business on April 25th, in the same banking rooms and with the same personnel as that formerly used and employed by Exchange. Exchange placed the liquidation of the pledged assets in the hands of a special liquidating committee. National handled the detailed execution of the decisions of the committee, reserving only the right of approval of its own executive committee as to liquidating transactions. That procedure was adopted in order to assure each corporation that the maximum values would be realized from the collateral. The notes were extended from time to time, interest payments were kept current, and liquidation of the assets proceeded. In February, 1941, Exchange conveyed to National all of the then remaining assets in full discharge of the balance due on the second note. The first note had been previously paid in full. Summit Drilling Corporation, hereinafter referred to as the taxpayer, owned 1100 shares of stock in Exchange, acquired on a cost basis of $87,000. In its income tax return for the fiscal year ended September 30, 1941, the taxpayer claimed a deduction of $87,000 on the ground that the stock became worthless during that year. The Commissioner of Internal Revenue disallowed the deduction and determined a resulting deficiency in tax. The Tax Court sustained the action of the Commissioner, and the proceeding is here on review.

Section 23(f) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 23(f), authorizes a corporation in computing net income to deduct losses sustained during the taxable year and not compensated for by insurance or otherwise. The burden rested upon the taxpayer to show that the loss occurred during the fiscal year for which the deduction was claimed. The Tax Court found that the stock was worthless prior to the beginning of that fiscal year. The finding is challenged on the ground that it is not sustained by substantial evidence. Certain persons who had been officers of Exchange

and later were officers of National testified to facts which tended to show that the stock did not become worthless until the transfer of all of the then remaining pledged assets in 1941. On the other hand a national bank examiner who examined National beginning August 31, 1933, and in connection therewith examined the pledged assets, testified that in his opinion Exchange was insolvent in 1933 and that the stock was worthless at that time. The evidence before the Tax Court, considered in its entirety, presented an issue of fact as to whether the stock became worthless in 1941, or prior thereto. The Tax Court resolved the issue against the taxpayer, the finding is supported by substantial evidence, and therefore it is not to be overturned on review. Foster v. Commissioner, 1 Cir., 112 F.2d 109; Freese v. Jones, 10 Cir., 156 F.2d 454.

The taxpayer urges strenuously that the first identifiable event on which a finding of worthlessness of the stock could be predicated was the transfer of the balance of the assets in 1941. But the testimony of the national bank examiner, buttressed by the acts of Exchange in selling its prime assets, in pledging all of its other assets, and in going out of business, constituted an adequate basis for the finding of the Tax Court that the stock became worthless prior to 1941. Foster v. Commissioner, supra; Freese v. Jones, supra.

█ Error is assigned upon the admission of certain testimony given by the auditor of National. The taxpayer placed the witness on the stand, and on direct examination he testified concerning certain records in the bank relating to the liquidation of the pledged assets. On cross examination he was permitted to testify over the objection of the taxpayer in respect to an appraisal of the pledged assets, made by the liquidating committee as of December 31, 1940. One ground of objection was that the testimony went beyond the scope of the direct examination. It is consistently held that the manner, extent, and scope of the cross examination of a witness respecting an appropriate subject of inquiry rests very largely in the sound judicial discretion of the trial court, the Tax Court in this instance, and that the action of the court in respect thereto is not ground for reversal of the judgment or order except where abuse of discretion is clearly shown. Rea v. Missouri, 84 U.S. 532, 21 L.Ed. 707; Davis v. Coblens, 174 U.S. 719, 19 S.Ct. 832, 43 L.Ed. 1147; Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624; District of Columbia v. Clawans, 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843. There was no abuse of discretion on this instance. The other ground of objection was that the witness did not make the appraisal and that only those who made it were competent to testify in respect to it. Ordinarily, only those who made an appraisal are competent to testify as to its correctness in respect to values fixed in the appraisal. But here the auditor did not undertake to give any testimony along that line. He merely testified as to what the appraisal showed in respect to values, figures, or results. Whether the testimony was open to the objection that the appraisal itself was the best evidence of its contents need not be considered as that question was not raised before the Tax Court and is not presented here. Clearly the testimony was not subject to objection on the two grounds urged against it.

█ The bank examiner who testified that in his opinion Exchange was insolvent in 1933 and that its stock was worthless at that time further testified that in reaching that conclusion he took into consideration among other things the official report of a national bank examiner who examined the bank in March, 1933. In the course of cross examination of the witness, the taxpayer sought to interrogate him in respect to the contents of the report. After the attorney for the Commissioner stated to the court that all reports of that kind were considered confidential, that it was a violation of the policy of the Comptroller of the Currency to make their contents public, and that the Comptroller of the Currency had declined to furnish the attorney for the Commissioner a copy of the report of the examination of August 31, 1933; and after the bank examiner testified that he was prohibited by instructions of the Comptrol-

706

ler of the Currency from reviewing in court reports of examination, the court denied the taxpayer the right to interrogate the witness concerning the contents of that report. The taxpayer then moved to strike from the record all of the testimony of the witness on the ground that he had testified from a confidential report which he was prohibited by law from disclosing, and later the taxpayer moved to strike all of the testimony of the witness based upon or relating to the report of his examination of August, 1933. The court denied both motions. Public policy frequently requires that state documents and information acquired by public officials not be made public. Where a witness testifies in part respecting a privileged document and in part respecting other matters, so much of the testimony as bears upon the document may be stricken but the remainder will be retained in the record. Kessler v. Best, C.C., 121 F. 439. And if the testimony is confined in its entirety to a privileged document and the authority of the witness to disclose the document is forbidden or so limited as to cut off the right of effective cross examination by the party against whom the testimony is offered, all of the testimony is subject to objection or motion to strike. Gilbertson v. State, 205 Wis. 168, 236 N.W. 539. But in this instance the testimony of the witness was not confined to the privileged report. He testified at length concerning other matters wholly unrelated to it. And his conclusion in respect to the insolvency of the bank with the resulting worthlessness of the stock was not predicated solely upon the report. The witness testified clearly and explicitly that he based his conclusion upon information in the files of the bank, upon financial statements, upon credit reports, upon statements made by officers of the bank, upon statements made by members of the liquidating committee, upon the report, and upon other data. It is fairly clear from the record that the taking of the report into consideration did not tip the scales when the witness came to form or reach a conclusion as to the insolvency of the bank. There is no doubt that if the report had been laid aside, his conclusion would have been the same. The taxpayer did not suffer any substantial prejudice in the denial of the motions to strike the testimony.

Other contentions are presented. It is enough to say without discussion that we fail to find any merit in them.

The decision of the Tax Court is affirmed.