## MAGNOLIA PETROLEUM CO.
### v. POWELL.
#### No. 4569.

United States Court of Appeals,
Tenth Circuit.
April 28, 1953.

Rehearing Denied May 22, 1953.

254

James E. Horigan, Oklahoma City, Okl., for appellant.

Kelly Brown, Muskogee, Okl., and Hugh M. Bland, Ft. Smith, Ark., for appellee.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

R. A. Powell was the bulk or wholesale dealer of petroleum products for the Magnolia Petroleum Company at Poteau, in LeFlore County, Oklahoma. These products included gasoline and kerosene which were consigned and delivered to Powell by Magnolia and placed in underground storage tanks from which quantities were taken and delivered to retail dealers and other customers. On August 25, 1951, Powell sold and delivered a quantity of kerosene to H. L. Long, a retailer, at Panama, Oklahoma. Between September 3rd and 7th, Long sold 5 gallons of the kerosene to a customer named Williamson. On September 11th, Williamson's wife was using some of the kerosene to start a fire in a stove. The kerosene exploded, causing serious injuries to Mrs. Williamson which resulted in her death. Williamson was also injured. Tests showed that the kerosene delivered to Williamson, as well as other sales from Long's container, was contaminated with a mixture of gasoline. After an investigation, Magnolia concluded that it was liable and paid $13,750 in settlement of damage claims for injuries to Williamson and the death of his wife. This action was brought under the provisions of an indemnity agreement [1] to recover that amount from Powell.

The case was tried to a jury which returned a verdict for Powell. Magnolia appeals from a judgment entered upon that verdict.

■ Magnolia's principal contention is that the uncontradicted evidence shows that the kerosene was contaminated by Powell, and that the court should have directed a verdict in its favor. The burden was upon Magnolia to establish by a preponderance of the evidence that Powell contaminated the kerosene. To sustain this burden, Magnolia undertook to prove that it delivered kerosene to Powell which was above minimum safety requirements in Oklahoma, and that Powell delivered contaminated kerosene to Long who in turn sold it to Williamson. The evidence establishes that the kerosene delivered to Powell complied with the standards prescribed by the State of Oklahoma, and no contaminated kerosene was found in Powell's storage tanks. Powell made his deliveries in a tank truck containing five compartments in which different types of petroleum products were carried, including gasoline and kerosene. There were two small compartments which were generally used for kerosene, but on occasions gasoline was placed in them. Immediately prior to the delivery to Long the compartments which were ordinarily used for kerosene had been filled with gasoline. Powell and his truck driver testified that these compartments were thoroughly cleansed of gasoline by spraying them with kerosene and allowing them to drain prior to putting Long's kerosene in them. There was some dispute in the evidence as to the amount of kerosene necessary to eliminate the possibility of contamination in a compartment after it had been used for gasoline.

Long testified that he obtained his kerosene from Powell and from no one else; that he kept the kerosene in a container near one end of his establishment; that the container was kept locked at all times except when being filled; that he had the key, and that the trucker delivering the kerosene would come into his store and get the key; that on the day the kerosene in question was delivered the trucker unlocked the container and then, after filling, locked it. Long further stated that he never found the container unlocked, but that he never checked

1. The indemnity agreement between Magnolia and Powell contained these provisions:

"Consignee assumes all liability for expenses, court costs, attorneys' fees, loss, damage of whatever character sustained by Consignor, resulting from the acts or alleged acts of Consignee or his employees and servants. * * * Consignee agrees to indemnify Consignor against any and all costs, expenses or loss arising directly or indirectly from the acts or alleged acts of Consignee or his employees, agents, or servants."

it after a delivery. He relied upon the trucker to lock the container after a delivery and to return the key to him. When Long had occasion to be away, he would leave the key with his wife.

The truck driver testified that he could not remember whether the container at Long's place was locked when he made the August 25th delivery, but he did remember having made a number of deliveries and found it unlocked. He stated that he would back up to the container, and if it was not locked, he would make the delivery, but if it was locked he would go to Long and get the key. When he finished, he always would leave the tank locked or unlocked, depending upon the way he found it.

Powell testified that he made frequent visits to Long's service station to determine if he needed any products and that he examined the container at various times, and never found it locked. He testified on cross-examination that he never saw a lock on the tank in all the times he was on the premises.

The facts in Magnolia Petroleum Company v. Howard, 10 Cir., 193 F.2d 269, were somewhat similar to those in this case. The question of fact there was whether the Magnolia delivered contaminated kerosene to its bulk dealer. It was said in the Howard case, that on appeal, we would inquire only to ascertain whether there was sufficient evidence to support the verdict and the judgment of the court. It was also said that the bulk dealer's liability to Magnolia under the indemnity clause of his contract depended upon whether he or his employees negligently caused the contamination, or if not, whether they knew or, by the exercise of reasonable care, should have known when they sold it that it was contaminated. The fact question in this case is whether the kerosene became contaminated while in the possession of Powell, and that was the issue which the court submitted to the jury. The evidence of the proper way to cleanse a tank after it had been used for gasoline was conflicting. There was also a sharp conflict in the evidence relative to the manner in which Long maintained his kerosene container.

The jury could have found from the evidence that Powell's tanks were properly cleansed and that the kerosene did not become contaminated while in his possession. The evidence may have been sufficient to sustain an inference that the kerosene was contaminated because Powell failed to cleanse the compartments of his truck properly, but the jury was free to reject that conclusion, and find that the evidence was insufficient to sustain such an inference. A verdict will be directed in negligence cases only when the evidence is so conclusive that the minds of reasonable men could not differ as to the conclusions to be drawn therefrom. Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497; Long v. Union Pacific R. Co., 10 Cir., 192 F.2d 788; Long v. Clinton Aviation Co., 10 Cir., 180 F.2d 665; F. W. Woolworth Co. v. Davis, 10 Cir., 41 F.2d 342, certiorari denied 282 U.S. 859, 51 S.Ct. 33, 75 L.Ed. 760.

The remaining question is whether the court erred in permitting certain cross-examination of Powell who was first called as a witness by Magnolia. On direct examination he testified extensively concerning his contract and dealings with Magnolia. On cross-examination he was questioned by his own counsel concerning the methods he used to cleanse the compartments in his truck after they had been used to carry gasoline. Upon objection, the court stated that the cross-examination was improper, but that the witness would be permitted to answer the questions as the witness of the defendant. This was clearly discretionary and no prejudice resulted. Wills v. Russell, 100 U.S. 621, 25 L.Ed. 607; Dickson v. United States, 10 Cir., 182 F.2d 131; Summit Drilling Corp. v. Commissioner of Internal Revenue, 10 Cir., 160 F.2d 703; Rose v. United States, 10 Cir., 128 F.2d 622, certiorari denied 317 U.S. 651, 63 S.Ct. 47, 87 L.Ed. 524; Bell v. United States, 4 Cir., 185 F.2d 302, certiorari denied 340 U.S. 930, 71 S.Ct. 492, 95 L.Ed. 671.

Judgment is affirmed.