Service v. Wolter.

---

No. 26,412.

MARIE SERVICE, *Appellee,* v. J. L. WOLTER, ADOLPH WOLTER, MARY WOLTER, WILLIAM MEYER and THE CITY OF WICHITA, *Appellants.*

SYLLABUS BY THE COURT.

1. MUNICIPAL CORPORATIONS—*Personal Injuries—Defects in Streets—Notice.* An obstruction consisting of eight yards of sand was placed on one of the most frequently traveled streets of a city by a contractor who was repairing a house. A traveler who was passing along the street at night shortly after it became dark drove into it and sustained damages. No lights had been placed on the obstruction that night, although the city had placed lights thereon the night before. *Held,* the question of whether the city had notice of the obstruction or whether the obstruction had existed for such a length of time that notice should be imputed to it, and whether it was negligent in not seeing to it that a danger signal was placed thereon the night of the injury, was one for a jury under proper instructions—following *Holitza v. Kansas City,* 68 Kan. 157, 74 Pac. 594.

2. DAMAGES—*Excessive Damages—Evidence.* A verdict of $6,274.87 was not excessive viewed in the light of the evidence disclosed by the record.

Damages, 17 C. J. p. 1103 n. 49; L. R. A. 1915F, 30; 8 R. C. L. 675. Municipal Corporations, 28 Cyc. pp. 1506 n. 55, 1507 n. 59; 20 L. R. A. n. s. 689; 46 L. R. A. n. s. 332; L. R. A. 1918B, 649; 11 A. L. R. 1343; 25 A. L. R. 453; 13 R. C. L. 340.

Appeal from Sedgwick district court, division No. 1; THOMAS E. ELCOCK, judge. Opinion filed January 9, 1926. Affirmed.

*Robert C. Foulston* and *George Siefkin,* both of Wichita, for the appellants.

*Chester I. Long, Joseph D. Houston, Austin M. Cowan, Claude I. Depew, James G. Norton, W. E. Stanley* and *W. B. Harms,* all of Wichita, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to recover for personal injuries. Plaintiff prevailed and the city appeals.

Plaintiff lived at El Dorado. She was invited to ride to Wichita, and with her companion arrived at the end of the East Central Avenue pavement, twelve miles from Wichita, shortly after dark, November 3, 1923. They were riding in a Ford car. Defendant Wolter was remodeling a house on East Central Avenue for one Meyer. He had piled eight yards of sand in the street in front of the Meyer house. The car struck the sand and overturned.

In answer to special questions the jury found that the car in which the plaintiff was riding was traveling at twelve miles per hour with proper lights; that there was no red light on the sand pile; that the officers of the Wichita police department had actual knowledge subsequent to sunset and prior to the accident that the sand pile did not have a red light thereon; that the accident occurred at 6:45 p. m. (one hour and seventeen minutes after sunset); that the manner in which the automobile was driven was not the proximate cause of plaintiff's injury; that the police officers discovered the absence of a red light on the sand pile the night before the injury, November 2, and placed a red light on it; that a street light was burning within seventy-five feet of the sand pile, but that it did not sufficiently illuminate the sand pile to make it observable from the automobile; that the officers of the city of Wichita immediately prior to the accident were not exercising reasonable care and diligence to discover unlighted obstructions in the street; that the plaintiff was coming to Wichita on personal business; that she was keeping a reasonably careful lookout; that the reason why she did not observe the sand pile was the absence of a danger signal; that she could not have seen the sand pile in time to warn the driver of the danger. The jury allowed damages as follows: Damages clothing, $25; cleaning and repairing clothing, $6.50; hospital bill,

$141.37; doctor bill, $95; board and room, $7; pain and suffering as a result of the injuries, $1,000; for permanent injury, $5,000; total, $6,274.87.

The defendant argues two propositions only—that no negligence was proved as against the city, and that the verdict was excessive. On the first point it contends that the owner of the property had a right to place sand in the street, and that the city had a right to assume that the contractor would comply with the ordinances and place proper lights on the sand pile each night; that it was not liable unless it had actual or constructive notice of the defect.

There was evidence showing the city found the sand pile unlighted the preceding night and placed lanterns there; that the second preceding night it was unlighted and was driven into by another person. The accident occurred on a much traveled street, one patrolled at practically all hours by motorcycle officers.

In *Holitza v. Kansas City*, 68 Kan. 157, 74 Pac. 594, where the city claimed an excavation remained unlighted for forty-five minutes to one hour, it was held that the question of notice was one for the jury to determine. It was said:

"An excavation was made on one of the most frequently traveled streets of a city by an abutting owner who was connecting his house with a water pipe, and it remained open for two or three days. A traveler, who was passing along the street at night and about an hour after it became dark, drove into the unguarded excavation. No lights had been placed there on that night, although the excavation had been guarded by a light on previous nights. *Held*, that the question of whether the city had notice of the defect, or whether the defect had existed for such a length of time that notice should be imputed to it, was one for a jury to decide, under proper instructions from the court." (Syl.)

In the opinion it was said:

"The claim is therefore made that, as the period in which no danger lights were up was only from forty-five minutes to an hour, notice to the city can in no event be implied. The defect in the street, however, was not the mere absence of a light, but it was the excavation which had existed for several days, a time sufficient from which to warrant a jury in imputing notice to the city. Besides, such excavations are usually made with the permission of the city, although it does not appear that permission was given in this instance; but whether made by its own officers or by third persons, the duty still rested upon the city to see that the excavation was properly guarded. It cannot escape responsibility simply because the excavation was made by a third person, nor because such person may have assumed the task of guarding it. Notice is not readily imputed where the defect is of short duration, as the city and its officers are only held to the exercise of reasonable care and diligence.

But here the defect had existed, as we have seen, for several days. It was upon one of the most frequently traveled streets in the city, and although the danger light was only absent an hour or less on the night of the injury it cannot be said that there was no question of fact to leave to the jury."

In the instant case it was proper for the jury to consider the prominence of the obstruction and the extent of travel on the street. The existence of the defect was not merely the absence of a light, but the obstruction itself. When an obstruction or excavation exists which ordinary care would require to be protected by lights or barriers, it is the duty of the city to see that they are furnished.

In *City of Salina v. Trosper*, 27 Kan. 545, the city of Salina was held liable for injuries arising from a defect in a sidewalk where the mayor and city marshal knew of the defect. The defect had existed for some time, but had been in a dangerous condition for two or three days only. While the mayor and marshal were not charged with the duty of taking care of the streets, that duty being vested in the council, it was held that notice to the mayor and marshal was sufficient, and that the jury was justified in finding the city liable without any actual notice to any officer. It was said that where a city permits a contractor or property owner to use the street for a purpose other than public travel, the city is charged with knowledge of all the conditions surrounding that use at all times. (See *City of Salina v. Kerr*, 7 Kan. App. 223; *Jansen v. City of Atchison*, 16 Kan. 358, 384; *Donaldson v. City of Boston*, 82 Mass. 508; *Koch v. Williamsport*, 195 Pa. St. 488; 13 R. C. L. 345; *Powell v. Village of Bowen*, 92 Ill. App. 453; *Reed v. City of Mexico*, 101 Mo. App. 155.)

It is contended that the verdict is excessive. The case was tried about fifteen months after the injury. The plaintiff testified, among other things:

"I have been supporting myself since 1919. The most terrible pain that I ever had—never let up until just about three or four months ago, but the pain never has left my hand. I commenced working and left my hand lying on my lap for the first few months after I went to work. Mr. Robinson of the A-1 Packer Corporation kept me in his office to do what work I could. He has paid me $40 a month since my injury. I got $100 a month before. Before this injury I made a good bit of money by dressmaking for my friends. I also made all of my own clothes then. Now I can't sew at all. I can't even use a needle. I played the piano before I was injured, but cannot play now. I have no use of my thumb and I can't use some of my fingers. The only thing for me to do is to select something I can take up and have to learn by degrees, the same way I got my experience as a stenographer. The partial loss

of the use of that hand interferes with me in cooking and housekeeping work. I can't pick up a pin because I cannot make a thumb out of one of these fingers. I am not able to curl my own hair. I have no way of feeling what I am doing with this hand and no thumb to grasp anything and I have burned my hand trying. I still have pains in that hand. There has never been a night since this accident but what I have been awakened sometime during the night and had to rub the hand to get myself to sleep. I have taken chiropractic treatments and electric treatments to try to restore the use of it. I can't see any improvement during the last few months. It just seems to stay stiff."

Under all the circumstances we are unable to say that the verdict was excessive. A collection of cases, some holding verdicts excessive and some not excessive, is found in 17 C. J. 1103.

The judgment is affirmed.