No. 30,800.

MARY SEYMOUR, *Appellee*, v. BUFORD F. KELSO and FRED SMITHGALL, Partners doing business as THE KELSO HAY AND GRAIN COMPANY, T. A. BURGASON, CHARLES A. LYNCH and THE CITY OF KANSAS CITY, *Appellants*.

(16 P. 2d 958.)

544

Opinion filed December 10, 1932.

J. H. Brady, N. E. Snyder, H. S. Roberts, Joseph A. Lynch, Alton H. Skinner, George H. West, John C. O'Brien, James K. Cubbison and William H. Towers, all of Kansas City, for the appellants.

A. J. Herrod, of Kansas City, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action for damages for personal injuries in which plaintiff recovered, and defendants have appealed.

The material facts disclosed by the evidence may be thus stated: Buford F. Kelso and Fred Smithgall are partners, doing business as the Kelso Hay and Grain Company. They lease from Charles A. Lynch a building situated in the industrial district of Kansas City in which they conduct their business. The building faces south on Pacific street and has a frontage of perhaps 100 feet. Directly in front of the building, and extending into the street about eleven feet, is a raised platform or dock used principally for loading and unloading hay and grain. At each end of the dock are four steps down to the level of the street. The door from the dock to the building is perhaps thirty feet from the west end of the dock. Kelso and Smithgall had an employee, John Liston, in charge of their office and of the work being done in the loading and unloading of hay and grain about the building. They were not there much of the time, but usually went there about noon and in the evening. T. A. Burgason had trucks and men in his employ and hauled hay and feed to and from the Kelso Hay and Grain Company. About nine o'clock on the morning of September 23, 1929, Burgason and his employees unloaded from one of their trucks a hayrack and placed it on the dock of the Kelso Hay and Grain Company between the

steps at the west end of the dock and the door. This hayrack was about twelve or fourteen feet long, perhaps five and one-half feet wide, and at the front end of it were upright boards about five feet high. When placed on the dock it was placed on its side, or edge, the front upright boards being towards the wall of the building and leaning against the wall. The other end was out away from the wall. It was almost perpendicular, leaning slightly against the wall. The workmen about the Kelso Hay and Grain Company, including John Liston, observed it. It was not tied to the wall in any way, nor braced to hold it in position.

Plaintiff, at that time a woman about seventy-two years of age, conducted a dairy and fruit farm near Kansas City. About four o'clock in the afternoon of September 24 she went to the Kelso Hay and Grain Company to purchase some hay or grain. She rode in her truck, driven by a man employed by her. This truck was backed up to the dock. She got out of the truck, walked to the west end of this dock, up the steps onto the floor of the dock, and was on her way to the door of the hay and grain company building. Quite a strong wind was blowing. As she walked past this hayrack on the dock it fell over on her. She received injuries to her left arm, left ear, a fracture of two ribs, and a fracture of the left clavicle. Liston and others observed her and lifted the hayrack, and while doing so Liston exclaimed: "I've been looking for that damned thing to kill somebody all the time."

There was in force at that time an ordinance of the city making it an offense for anyone negligently or wantonly to place and permit to remain on the surface of any street or sidewalk any obstruction of a nature likely to cause injury to pedestrians.

Plaintiff brought this action against Kelso and Smithgall, Burgason, the city of Kansas City, Kan., and Lynch, but as to the last named the action was dismissed. Kelso and Smithgall answered with a general denial, but admitted they were partners as alleged. Burgason filed a separate answer consisting of a general denial, a contention that plaintiff's petition failed to state a cause of action, and pleaded contributory negligence. The city of Kansas City answered, admitting its corporate existence and that a notice and claim of injury was filed with the city, and denied any notice or knowledge that the hayrack was on the dock.

At the opening of the trial defendants severally asked to make

separate peremptory challenges of jurors. This was denied, and they complain of it. We see no error in this ruling. Normally, in civil actions, the plaintiffs collectively and the defendants collectively have three peremptory challenges. The pertinent part of the statute (R. S. 60-2907) reads: "The plaintiffs shall challenge jointly and the defendants who are united in interest shall challenge jointly." Appellants stress the words "who are united in interest," and argue that they were not so united. The statute does not require that they be given separate peremptory challenges if they are not united in interest; hence, for the court to refuse it in any case would not be error, unless the separate defenses and other circumstances were such that this court should say the trial court abused its discretion. Appellants cite *Healer v. Inkman,* 94 Kan. 594, 146 Pac. 1172, in which plaintiffs in an action for damages were defeated in the court below and appealed. One of their complaints was that the trial court allowed the two defendants three peremptory challenges each. This court held it was not error to allow each of them three peremptory challenges. We are cited to no case from our own court in which it was held error for the trial court to refuse to allow the separate challenges. More than that, there is no showing in this case that the defendants collectively exercised as many as three peremptory challenges, nor is there any complaint made of the jury selected to try the action, hence, if there was error in the ruling there is no showing that it was prejudicial to defendants.

Appellants Kelso and Smithgall complain that the court admitted in evidence the testimony of the exclamation of John Liston, above mentioned, for its bearing upon his knowledge of the dangerous position of the hayrack on the dock. This was a spontaneous statement as distinct from a narration of a past transaction, was made at the time he was lifting the hayrack from plaintiff, and hence a part of the *res gestœ,* as that term is sometimes used, and was admissible under the well-recognized exception to the rule excluding hearsay. (3 Wigmore on Evidence, §§ 1745, 1750; 10 R. C. L. 974, 986; *Tannahill v. Oil and Gas Co.,* 110 Kan. 254, 256, 203 Pac. 909; and, as bearing on this point, see cases collected in the annotation, 76 A. L. R. 1121, and the prior annotations there cited.) John Liston was in charge of the business of Kelso and Smithgall, and for the purpose of this case, at least, their general manager. The statement tended to disclose his knowledge of the insecure manner the hayrack had been placed and permitted to remain on the dock, and

the likelihood that it would fall, causing injury to someone. His knowledge in that respect is tantamount to the knowledge of Kelso and Smithgall, for he was their responsible manager there in charge. However, without this statement the result would be the same. Plaintiff was there as an invitee of Kelso and Smithgall and to transact business with them. She was on this dock going to their office for that purpose and in a place where she had a right to be, and a place where, as the law views it, they invited her to be. It was their duty to have the place reasonably safe for her, and necessarily the duty of their manager in charge to know whether or not it was a safe place for her. This hayrack had been in its insecure position on the dock since nine o'clock a. m. the day before plaintiff's injury. Kelso and Smithgall, either personally or through their manager, were bound to have known this, and as against this plaintiff cannot be heard to say they did not know it. The spontaneous statement of their manager Liston is confirmatory only of what the evidence otherwise established. The court correctly limited this evidence to its effect on the liability of Kelso and Smithgall.

The court instructed the jury that the defendant Burgason owed no duty to plaintiff other than to refrain from violating the city ordinance. On his behalf it is argued that if he violated the city ordinance he did so when he placed the hayrack on the dock, more than thirty hours before plaintiff's injury, and that this was too remote. We regard the point as not being well taken. If he violated the ordinance in placing the hayrack on the dock he further violated it by permitting it to remain there, since the ordinance applies to both. On behalf of Burgason it is argued, also, that in any event his negligence was not the proximate cause of plaintiff's injury; that there was a separate intervening cause, namely, the wind. One witness for plaintiff testified that at the time of plaintiff's injury "the wind was blowing; it was a very windy day; a heavy wind;" and on cross-examination: "It was a windy day; I couldn't say how fast the wind was blowing; it was blowing all directions; a pretty windy day; . . . the wind was blowing all day though." On this point appellant cites and relies on Railway Co. v. Columbia, 65 Kan. 390, 69 Pac. 338. There the jury found there was a "severe gale," which, under definitions of a "heavy gale," this court construed "as a wind having a velocity of eighty miles an hour." (p. 401.) We do not regard the evidence in this case as establishing facts which bring it within the rule of the case cited, which, this

court has observed, might have been decided on the ground that no negligence of the railway company was shown. See *Meecke v. Morguies*, 128 Kan. 423, 425, 278 Pac. 45. Wind of ordinary velocity is so frequent that people normally must anticipate it. In the case last cited the court followed the rule "that where an accident and injury flow from the concurrent negligence of a person and of a force of nature, such as a windstorm, the fact that the windstorm contributed to the accident and injury does not excuse the human negligence." (Syl. ¶ 2.) Considered from the viewpoint most favorable to appellant, it is a question of fact for the jury rather than a question of law for this court to determine whether the wind was so severe as to amount to a separate intervening cause. There is no such finding in this case. Indeed, the evidence would not support such a finding had it been made.

Appellants complain that one of the physicians was permitted to give an opinion that plaintiff's defect of hearing in the injured ear was caused in part by an injury, which opinion was based in part upon the history of the case. The only history of the case considered by the physician in forming his opinion was that learned by his treatment of the plaintiff throughout several weeks. In other words, it was an opinion based in part on the result of his treatment of the patient—the record or history of that treatment. It was his judgment that the defect of hearing would have been improved by the treatment if it had been caused by anything other than an injury. These are matters which properly form the basis of the opinion or judgment of a physician.

The appellant, the city of Kansas City, contends that no liability on its part is shown by the evidence. In this connection we first note that the city's liability, if any, is not predicated on the fact that it had permitted the abutting owner to construct and use the dock in the street and over that portion of the street normally used as a sidewalk. This is in an industrial district of the city and little, if any, pedestrian travel along the street is shown by the evidence. That the city officers in their discretion may permit such use of a street temporarily has been frequently decided, and in this case the contrary is not seriously contended. Then, plaintiff's injury was not caused by the dock, or by any defect in the dock itself. For the purposes of this case, so far as the liability of the city is concerned, the dock must be considered a part of the street, or as a sidewalk

along the side of and within the street. The rule pertaining to the liability of the city in such circumstances is well stated in 43 C. J. 992, as follows:

"A municipal corporation is liable for injury resulting from an . . . obstruction in one of its public streets, made by an abutting owner for his own purposes, if the corporation had actual or constructive notice of the dangerous condition of the street for a sufficient length of time to enable it to guard the public safety."

In this case it is not shown that any official or employee of the city had notice or knowledge of the fact that the hayrack had been placed on the dock. It is conceded there was no actual notice to the city of that fact. But appellee contends that it had been there a sufficient length of time—about thirty hours—and the city is presumed to have had notice of its presence and of the insecure position in which it had been placed on the dock. We cannot give our consent to this contention. This dock was being used almost continuously with appliances for the handling of hay and grain. The city officials had no reason to anticipate that any of them would be left on the dock in a position so insecure as to be likely to cause injury to persons rightfully there. To hold the city liable to anticipate such conduct by those in charge of the use of the dock, and to the necessity of having inspections made frequently to see that it was not so used, would be to place too great a burden upon the city. Appellee cites a number of cases in which the city had been held liable for insecure objects placed on the sidewalk or street, or because of excavations or defects therein: *City of Salina v. Trosper,* 27 Kan. 544; *Anderson v. Pierce,* 68 Kan. 57, 74 Pac. 638; *Holitza v. Kansas City,* 68 Kan. 157, 74 Pac. 594; *Tepfer v. City of Wichita,* 90 Kan. 718, 136 Pac. 317; *Malchow v. City of Leoti,* 95 Kan. 787, 149 Pac. 687; *Evans v. City of Hutchinson,* 99 Kan. 477, 162 Pac. 342; *Service v. Wolter,* 120 Kan. 141, 242 Pac. 464; *Dalke v. City of Inman,* 122 Kan. 728, 253 Pac. 240.

But the opinion in each of these cases discloses either that the city officials had actual knowledge of the obstruction or defect, or that the same had existed, in some instances, for weeks or months, and in any event for a sufficient length of time that under the particular circumstances the officials of the city must have had such notice or knowledge.

Considerable is said in the briefs concerning the doctrine of *res ipsa loquitur* as applied to this case. It is true, plaintiff pleaded

generally the facts which might make the doctrine applicable, but also pleaded specific acts of negligence. The specific acts of negligence on the part of the defendants Kelso and Smithgall and Burgason were proved. It is therefore no longer important whether plaintiff could have relied upon the general negligence under the doctrine of *res ipsa loquitur*. Appellants complain of some of the instructions of the court. We have examined these instructions and find nothing wrong with them.

Appellants contend that the amount, $8,000, recovered in this case is excessive. At the time of her injury plaintiff was seventy-two years of age, but was active in the management and in assisting with the work of operating a dairy and fruit farm. Two ribs on the left side were fractured, the left clavicle was broken, the left ear was injured, a part of the external ear being torn, and the internal ear injured, and she was otherwise bruised. She suffered shock. She was taken to the hospital unconscious, or nearly so, and fully regained consciousness in about twenty-four hours. She was in the hospital four weeks and suffered pain, her sleep was impaired, and it was necessary to give her sedatives. The fractured ribs healed, the broken clavicle was reset and healed with good alignment, and the ear trouble greatly improved. On leaving the hospital she had improved so much that treatment by a physician was no longer necessary. Shortly before the trial of this case, nearly two years after her injury, she again consulted a physician and complained of dizziness and nervousness, which may or may not have resulted from her injury. Her permanent injuries consist of an inability to raise one arm more than fifty per cent—its lateral motion is good—and about a twenty per cent defect of hearing in the injured ear. Her expenses for hospital and nursing were $509 and for a physician $130. She testified that she had been compelled to hire an extra man to operate her dairy and fruit farm since her injury, and that his wages up to the time of the trial amounted to $780. Considering her age and normal life expectancy, and the fact that the permanent injuries were not of a character to be of great consequence, it seems clear that the verdict is excessive by at least $2,000.

The judgment against the city of Kansas City should be reversed, with directions to enter judgment for the city of Kansas City. Plaintiff should be given permission to accept a remittitur of

$2,000 in the amount of the verdict and judgment. If the remittitur is accepted, the judgment of the court below is affirmed as to Kelso and Smithgall and as to Burgason; otherwise, a new trial should be granted as to them. It is so ordered.