No. 31,975

MARTIN CRAWFORD, *Appellee*, v. THE CITY OF WICHITA, *Appellant*.

(39 P. 2d 911)

Opinion filed January 26, 1935.

*Vincent F. Hiebsch* and *K. W. Pringle*, both of Wichita, for the appellant.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith* and *C. H. Morris*, all of Wichita, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover for injuries sustained by plaintiff while driving upon the streets of Wichita, and from a judgment in his favor the city appeals, urging that the evidence and special findings (a) showed plaintiff was guilty of contributory negligence which barred his recovery, and (b) failed to show the city had notice of the defect for a sufficient time to have remedied such condition.

Briefly stated, the evidence showed at a certain point in the street the city had a manhole over a storm sewer; that in times of heavy rains the water would come up through the manhole and displace the cover; that sometime before the injury complained of the city took away the existing cast-iron manhole cover and put in its place another iron cover which was filled in and covered over with asphalt. On the day of the injury, and during a heavy rainstorm, plaintiff drove a model T Ford down the street and ran into the

manhole, the cover of which had been displaced by the water escaping from the storm sewer. The jury, in addition to its general verdict, answered special questions as follows:

"1. Do you find from the evidence that on September 21, 1932, the manhole cover in question was displaced prior to the time plaintiff ran into it? A. Yes.

"2. If you answer the preceding question in the affirmative, state:

(a) How long said manhole cover was displaced prior to the time plaintiff ran into same. A. 30 minutes.

(b) What caused said manhole cover to be displaced at said time? A. Heavy rain.

"3. Was the water from said manhole shooting up above the street level immediately prior to and at the time plaintiff ran into same? A. Yes.

"4. If you answer the preceding question in the affirmative, state how high said water was shooting above the street level at said time. A. 2 feet.

"5. If you answer question 3 in the affirmative, state how far said water shooting up from said manhole was visible immediately prior to the time plaintiff ran into same. A. 75 feet to person not out in rain.

"6. State whether plaintiff could have seen said water shooting up from said manhole in time to have avoided same. A. No.

"7. State whether or not there was room for plaintiff to have gone north or south and avoided running into said manhole. A. Yes.

"8. At what rate of speed was plaintiff proceeding immediately before he reached the manhole cover? A. 20 miles."

The city filed no motion to set aside any answer as not sustained by the evidence, nor as contrary to the evidence, but did file its motion for judgment notwithstanding the verdict on the ground that the special answers showed plaintiff guilty of contributory negligence; that the city had no actual notice of any defect existing at the time of the injury; that the defect found did not exist for such length of time that the city, by exercise of reasonable care, would have knowledge of the existence of the defect, and that the answers show defendant is entitled to judgment. This motion, as well as the city's motion for a new trial, was denied.

Appellant's first contention amounts to this: Appellee was guilty of contributory negligence as a matter of law.

The jury's findings and the evidence showed that the manhole cover had been displaced by the heavy rain and that water was shooting up about two feet above the pavement at the time of the accident; that plaintiff was driving his model T Ford, which was equipped with lights with which he could see about a block ahead when it was not raining, but with which at the particular time he

could see about eight feet ahead; that it was raining hard; that he could see red lights on a car half a block ahead; that the pavement was covered with water and he could not tell how deep it was, and while driving along he ran into the manhole. The jury found he could not have seen the water shooting up from the manhole in time to have avoided it.

Appellant's argument is based on the holding of some of our decisions that it is negligence as a matter of law to drive an automobile along a highway on a dark night at such speed that it cannot be stopped within the distance that objects can be seen. The question whether there was a defect which could be seen within the range of the headlights was resolved against appellant's contention by the jury; it is true witnesses who were on porches near the street said they could see the water spouting up. The jury had to consider whether the driver of a car who had to watch the road ahead of him for other cars and traffic, during the continuance of a hard rain, was bound to see the spouting water where the whole pavement was covered with water. It might well be that a person sitting on a porch, protected from the storm, and watching a limited field, could observe things not discernible to a driver passing down the street in an automobile. If reasonable minds might come to different conclusions from the facts, the question was for the jury.

The same contention was made in *Sponable v. Thomas,* 139 Kan. 710, 719, 33 P. 2d 721, where a somewhat similar situation obtained. In that case decisions of the court, relied on here, were cited and distinguished. While the plaintiff was not warranted in blindly driving down the street without paying any attention to the condition of the street, he did have the right to assume that the street itself was reasonably safe and did not have pitfalls and open manholes therein. Had the night been clear and had there been water gushing up from the manhole, a different situation would have been presented. Because it was raining hard and travel was difficult did not mean that plaintiff proceeded down the street at his peril. Under all the circumstances, we are of the opinion that it was a question of fact whether or not plaintiff was guilty of negligence that contributed to his injury, and that it cannot be said as a matter of law that he was so guilty.

Appellant's second contention is that the city had neither actual nor constructive notice of the defect. This argument is predicated on the answer of the jury that the manhole cover was off only

thirty minutes prior to the injury. The appellee's evidence showed that originally the manhole was covered with a cast-iron cover; that it had a tendency to rattle off and to come off during hard rains; that the city was notified and the first cover was replaced by another cast-iron cover which was filled in with asphalt. It is not clear from the evidence just when the second cover was put on but apparently it was about three years before the injury. About three or four months before the injury a man living near the place called and told the street and alley department of the city that whenever there was a heavy rain there was a tendency to blow off the manhole cover. Witnesses who were employees of the city's street department testified that complaints were made, but put the time two or three years before the accident. It was shown by the city that after the injury it had replaced the asphalt cover by putting down an open grate covering, which was bolted down.

The city relies on *Seymour v. Kelso*, 136 Kan. 543, 16 P. 2d 958, in support of its contention that the city had no notice. It does not support the contention, for in that case a hayrack was permitted to fall into a street and cause injury. Here the defective condition was caused by the city's own construction.

An exhaustive annotation on liability of a municipal corporation for defects or obstructions in streets will be found in 20 L. R. A., n. s., 513. On the question of notice, see page 701 as to where the obstruction is created by the city, page 717 as to general defectiveness as affecting particular defect, and page 725 as to city's duty to inspect.

In *City of Abilene v. Cowperthwait*, 52 Kan. 324, 34 Pac. 795, the city had permitted an owner to make an excavation in the sidewalk and street in front of his house, the opening not being securely guarded or covered. Cowperthwait walked on the covering and it collapsed and he was injured in falling into the excavation. The city defended on the ground it had no notice. There was dispute in the evidence as to the sufficiency of the covering, whether it was properly constructed, etc. It was held to be the duty of the city to exercise a reasonable supervision, and had it done so the perilous character would have been apparent, and under the circumstances it could not be said the city was without notice. In the case before us, however, the city had replaced a concededly insufficient cover with the asphalt cover, and complaint had been made as to it. While there was dispute in the evidence, the jury was warranted in

believing the testimony that within a few months of the injury specific complaint that heavy rains were displacing the cover was made to the city. (See White on Negligence of Municipal Corporations, § 270, page 336.) Under such circumstances it cannot be said that the city was without notice, neither can it be said because that cover was replaced that no defect then existed until the cover was again displaced, and that the displacement having existed only thirty minutes before the injury, that the city had no actual notice and the defect had not continued for a sufficient length of time for it to have constructive notice. It is apparent that the city knew the first cover was insufficient, and when it repaired it, it was obliged to make a repair that remedied the defect; it made a repair and was notified the defect was not eliminated. Under the evidence, which the jury evidently believed, it must be held the city had notice.

The judgment of the trial court is affirmed.