**KANATSER v. CHRYSLER CORP. et al.**

No. 4434.

United States Court of Appeals, Tenth Circuit.

Aug. 28, 1952.

Rehearing Denied Oct. 22, 1952.

Writ of Certiorari Denied Jan. 19, 1953.

See 73 S.Ct. 388.

Bratton, Circuit Judge, dissented.

Phil E. Daugherty, Oklahoma City, Okl., for petitioner.

D. A. Richardson of Richardson, Shartel & Cochran, Oklahoma City, Okl., for respondent.

Before BRATTON, MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

We granted petitioner leave to file an application for a writ of certiorari to review an order of the District Court for the Western District of Oklahoma, granting a new trial in this case. The application alleges and the facts are, that in this suit for personal injuries the petitioner obtained a jury verdict against the respondent on November 3, 1950, in the sum of $33,283. The Clerk's Minute Book shows that the verdict was ordered filed, judgment was entered thereon, and counsel directed to prepare a journal entry accordingly. Thereafter, and within ten days, the respondent, defendant below, renewed its motion for judgment in its favor or in the alternative a new trial. The motion alleged numerous errors in the trial of the case, but did not complain of the excessiveness of the verdict. After having been continued from time to time, the motions came on for hearing on the 27th day of June, 1951. After argument, the court expressed the view that the jury verdict was excessive and ordered a remittitur of that part of the judgment in excess of $15,000. Petitioner was granted five days in which to accept or reject the remittitur and the matter was continued until July 10, 1951.

A journal entry filed July 16, 1951, ordered the judgment of November 3, 1950, set aside, and granted defendant's motion for a new trial on the grounds "that the verdict is excessive and because of the failure of the plaintiff to file a remittitur as ordered by the court." A journal entry filed on July 18, 1951, recited the appearance of the parties on the 16th day of July, overruled the defendant's motion for entry of judgment in its favor, and further recited that "the defendant's alternative motion for new trial has been disposed of as shown by the journal entry of judgment filed herein on the 16th day of July, 1951." From the order granting a new trial, the petitioner timely appealed to this court. We dismissed the appeal on the grounds that the order granting the new trial was not appealable. Kanatser v. Chrysler Corporation, 10 Cir., 195 F.2d 104. Thereafter, we granted leave to file this application for a writ of certiorari, to determine whether in the circumstances, the order granting the new trial is reviewable by the extraordinary common law remedy invoked.

The basis of the application for the writ is, that inasmuch as the new trial was granted more than ten days after the entry of judgment on a ground not asserted in the timely motion for a new trial, the order

was in excess of the court's jurisdiction, and therefore reviewable on writ of certiorari.

■ Since the first Judicial Act of September 24, 1789, Sec. 14, 1 Stat. 73, 81, the Federal courts have been empowered to issue "all other writs not specially provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law." And, see 28 U.S.C.A. § 1651. But, we have been repeatedly admonished that these common law writs are not substitutes for authorized appeals, and do not confer appellate jurisdiction not otherwise existing. Historically the courts have utilized these writs in extraordinary or exceptional circumstances to confine lower courts to their jurisdiction or to require them to exercise a mandatory jurisdiction, in the interest of the proper administration of justice. In re Chetwood, 165 U.S. 443, 17 S.Ct. 385, 41 L.Ed. 782; McClellan v. Carland, 217 U.S. 268, 30 S. Ct. 501, 54 L.Ed. 762; Adam v. U. S. ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268; Ex parte Fahey, 332 U.S. 258, 67 S.Ct. 1558, 91 L.Ed. 2041.

Thus, the writ of certiorari was utilized by the Supreme Court to confine the District Court within its jurisdiction in In re Chetwood, supra. The writ of mandamus was deemed appropriate to compel the lower court to exercise its jurisdiction in McClellan v. Carland, supra. More recently, the issuance of a writ of habeas corpus, as an incident to the exercise of appellate jurisdiction, was held not to be an abuse of judicial discretion in Adams v. U. S. ex rel. McCann, supra. In Roche v. Evaporated Milk Association, 319 U.S. 21, 63 S.Ct. 938, 87 L.Ed. 1185, the Supreme Court reversed the Court of Appeals, 9 Cir., 130 F.2d 843, for the issuance of a writ to the District Court, mandamusing it to reinstate pleas in abatement and replications and to try issues of fact thus raised. The court was of the opinion that the District Court had acted within its jurisdiction and had rendered a decision, which, if erroneous, involved no abuse of judicial power, and that in issuing the writ, the Court of Appeals had substituted mandamus for appeal contrary to the statutes and policy of Congress restricting the court's appellate review to final judgments of the District Courts. A writ of prohibition was availed of by the Supreme Court in Ex parte Republic of Peru, 318 U.S. 578, 63 S.Ct. 793, 87 L.Ed. 1014, to restrain the District Court from exercising further jurisdiction in an admiralty suit, although the case was one in which direct appellate jurisdiction was vested in the Court of Appeals. Still more recently, the Supreme Court in United States Alkali Export Association v. United States, 325 U.S. 196, 65 S.Ct. 1120, 89 L.Ed. 1554, granted a writ of certiorari to review an order of the District Court overruling a motion to dismiss a proceedings on the grounds that it lacked jurisdiction over the subject matter, even though the order was in no sense a final adjudication. The Supreme Court was prompted to issue the writ on the grounds that the suit, brought by the United States under the Sherman Act, 15 U.S.C.A. §§ 1–7, 15 note, was within the exclusive jurisdiction of the Federal Trade Commission, and that the exercise of jurisdiction by the District Court to a final judgment would impose great hardships upon the defendants, and also infringe the Congressional policy of conferring primary jurisdiction upon the Federal Trade Commission. Mandamus has been deemed inappropriate and appropriate to review purely interlocutory transfer orders under 1404(a), 28 U.S.C. Magnetic Engineering & Manufacturing Co. v. Dings Manufacturing Co., 2 Cir., 178 F.2d 866; Ford Motor Co. v. Ryan, 2 Cir., 182 F.2d 329; Gulf Research & Development Co. v. Harrison, 9 Cir., 185 F.2d 457; Atlantic Coast Line R. Co. v. Davis, 5 Cir., 185 F.2d 766; Paramount Pictures v. Rodney, 3 Cir., 186 F.2d 111; Clinton Foods, Inc., v. United States, 4 Cir., 188 F.2d 289; Anthony v. Kaufman, 2 Cir., 193 F.2d 85; Gulf Research & Development Co. v. Leahy, 3 Cir., 193 F.2d 302; Wiren v. Laws, D.C.Cir., 194 F.2d 873.

These cases serve to demonstrate the versatility of common law writs to effectuate the ends of justice, where more orthodox processes might tend to obstruct it. And, it becomes apparent that in determin-

ing whether the writ should issue, we should give first consideration to whether the trial court had jurisdiction to grant the motion for new trial. If it did, the writ obviously should be denied. If on the other hand, the court lacked jurisdiction to grant a new trial, we should next consider whether appellate jurisdiction lies to review the order, for as we have seen, the writ should not be utilized to enlarge appellate jurisdiction.

■■ Undoubtedly, the trial court was authorized to grant a timely motion for new trial on any grounds asserted therein. Rule 59(b), Federal Rules of Civil Procedure, 28 U.S.C. The court was also authorized under Rule 59(d) to, "Not later than 10 days after entry of judgment", of its own initiative order a new trial for any reason for which new trials are authorized, whether asserted in the timely motion for new trial or not. And, such orders being within the jurisdiction of the court and interlocutory, are not appealable. City of Manning v. German Ins. Co., 8 Cir., 107 F. 52; Phillips v. Negley, 117 U.S. 665, 6 S.Ct. 901, 29 L.Ed. 1013; Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439; Barbarino v. Stanhope S. S. Co., 2 Cir., 150 F.2d 54. But, it is well settled in this and other jurisdictions that if the court purports to grant a motion for new trial on any ground not asserted therein, it acts upon its own initiative and hence must do so within the ten day limitation prescribed by Rule 59(d), supra. Freid v. McGrath, 76 U.S.App.D.C. 388, 133 F.2d 350; Marshall's U. S. Auto Supply v. Cashman, 10 Cir., 111 F.2d 140; Bailey v. Slentz, 10 Cir., 189 F.2d 406.

Thus, in Freid v. McGrath, supra, the trial court purported to grant an amended motion for new trial for inadequacy of damages, a ground not set up in the motion or amended motion. Following our Marshall case, the Court of Appeals held the order in excess of jurisdiction. The court said that [76 U.S.App.D.C. 388, 133 F.2d 355] "To contend that when a motion for new trial has been timely filed, the time within which the judge may act to grant a new trial upon other grounds is thereby indefinitely extended misses the purpose of the ten-day limitation imposed by paragraph (d) of the rule." And, the court went on to say that "If the judge who presided at a trial is not sufficiently persuaded of the need for a new trial so that he acts within ten days following the entry of judgment —which may occur some time after the submission of the case—then the rule specifies that he may not thereafter act, of his own initiative, to require a new trial." There is good reason for thus confining the trial court within the narrow limits of its discretionary powers, for it is important in the administration of justice that there shall be an end to litigation, and that issues tried and decided by a jury shall not be lightly set aside. If a case is to be retried, it should be done with dispatch, lest the error of delay outweigh the error of trial.

■ Here the trial court purported to grant the motion for new trial more than six months after the entry of the judgment, on a ground not asserted in the motion. In so doing, he acted on his own initiative and beyond his jurisdiction.

A clear distinction has always been drawn between orders granting a new trial which were within, and those without the jurisdiction of the court to grant. See Freid v. McGrath, 76 U.S.App.D.C. 388, 133 F.2d 350. A long time ago it was said that "The vacating of a judgment and granting a new trial, in the exercise of an acknowledged jurisdiction, leaves no judgment in force to be reviewed. If, on the other hand, the order made was made without jurisdiction on the part of the court making it, then it is a proceeding which must be the subject of review by an appellate court." Phillips v. Negley, 117 U.S. 665, 671, 6 S.Ct. 901, 903, 29 L.Ed. 1013.

Thus, before the advent of the Federal Rules of Civil Procedure, orders granting a new trial within the term were said to be interlocutory and not appealable, while orders granting a new trial after expiration of the term were in excess of the court's jurisdiction, and therefore appealable. Phillips v. Negley, supra; Board of Supervisors of Rockland County v. Knickerbocker, 2 Cir., 80 F.2d 248; City of Manning v. German Insurance Co., 8 Cir., 107 F. 52, 54. In the latter case, Judge San-

born, speaking for the 8th Circuit, reaffirmed the rule that "An order granting or refusing a new trial, which the court has the jurisdiction or power to make, is discretionary, and cannot be reviewed * *. But the question whether or not the court had the jurisdiction or power to make an order granting or refusing a new trial and avoiding a former judgment is always reviewable in the federal courts * * * because it goes to the effect and finality of the judgment itself." And, following this rule and its exception, the 8th Circuit in Greyerbiehl v. Hughes Electric Company, 8 Cir., 294 F. 802, granted a writ of certiorari to review an order of the District Court granting a new trial after expiration of the term, where no writ of error or appeal was taken through no fault of the petitioner. This rule of appealability has been carried over and applied under the Federal Rules of Civil Procedure, where the court exceeded its authority to grant new trials under the rules. See Freid v. McGrath, supra; Foster-Milburn Co. v. Knight, 2 Cir., 181 F.2d 949; Untersinger v. United States, 2 Cir., 181 F.2d 953.

 The question remains whether the circumstances here present a proper case for the utilization of certiorari. We think they do. The writ was sought only after the dismissal of a timely appeal. Ordinarily, on a retrial of the case the order of the court granting the new trial for the stated reasons, could be assigned as error and brought here for review from the final judgment on retrial. See Marshall's U. S. Auto Supply v. Cashman, 10 Cir., 111 F.2d 140. And, given this unfettered remedy, we should be inclined to withhold the issuance of the writ for pursuance of the more conventional procedure. But here, the trial court has stated on the record, in effect, that under no circumstances would he permit a verdict in excess of $15,000 to stand. If this statement is accepted on its face, it means that other trials of the case resulting in a verdict in excess of $15,000 would never reach this court for review of the order, sought now to be reviewed, for each case would result in an unappealable order granting a new trial. It follows from the record that if the petitioner is to have a right of appeal from an appealable order he must have it now, and the writ is therefore granted.

The parties have commendably stipulated to the effect that in the event certiorari is granted, instead of a certification of a new record to be used in this proceedings, the printed transcript lodged in the appeal case, 10 Cir., 195 F.2d 104, together with the supplements thereto, shall be used in determining the questions raised in this proceedings. It is also agreed that the court shall consider the briefs heretofore filed by the parties in the appeal case, together with any supplements filed herein.

 The petitioner (as appellant in the appeal ase) raised only the question of the authority of the court to grant the motion for new trial on a ground not assigned therein more than ten days after entry of the judgment. In response, respondent (as appellee) cross-assigned all of the errors alleged in the timely motion for new trial, on the theory that if the trial court was not authorized to grant the motion for the stated reasons, the order granting the new trial should nevertheless stand, if on the record a new trial should have been granted for any reason assigned in the timely motion. Respondent thus invokes the time honored and salutary rule to the effect that the issue on appeal is the correctness of the order or judgment assailed, not the reasons therefor, and if such order or judgment is sustainable on any legal basis, it is the duty of the appellate court to do so, even though the trial court may have given the wrong reasons for the order. U. S. v. American Ry. Exp. Co., 265 U.S. 425, 44 S. Ct. 560, 68 L.Ed. 1087. In its reply brief on the appeal, petitioner accepted this theory of the case and met each cross-assignment of error. We accept and consider the case as thus submitted. Cf. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147. In this posture we consider the allegations of error set out in the timely motion for new trial as cross-assignments of error in support of the order granting the new trial.

The allegation of negligence in this case was to the effect that the Chrysler Corporation sold and delivered to the pe-

titioner a new Dodge automobile with a defective "tie rod"; that while riding in the same upon the highway five days after the purchase and delivery, the defective tie rod failed, causing the accident and damages complained of. The verdict of the jury is necessarily based upon a finding of negligence, as alleged. The first assignment of error is that on the evidence, the trial court should have directed a verdict for the respondent for lack of sufficient evidence to show that the tie rod was defective when the car was sold and delivered, or that the accident was caused from the failure of such alleged defect.

There was competent evidence to the effect that while the car was traveling upon the highway at a reasonable rate of speed, the left front wheel suddenly turned toward the inside of the highway causing a collision with an oncoming car. It was also shown that the left tie rod was broken, and there was expert testimony to the effect that it was partially broken and in a defective condition before the accident occurred. While there was competent evidence to the contrary, the petitioner's proof was entirely sufficient to present issuable facts for the jury. See General Motors Corp. v. Johnson, 4 Cir., 137 F.2d 320; Hupp Motor Car Corp. v. Wadsworth, 6 Cir., 113 F.2d 827; Goullon v. Ford Motor Co., 6 Cir., 44 F.2d 310. The jury conclusively resolved the facts in favor of the petitioner.

Petitioner's sister, who was driving the new Dodge at the time of the accident, was asked on cross-examination if she had a cause of action pending against the respondent in Detroit and she answered that she did. She was then asked the amount of damages she was seeking, but upon objection of petitioner she was not permitted to answer. The respondent assigns the court's exclusion of this evidence as reversible error, contending that such information was relevant and material to her credibility as a witness.

Interest in an action is evidence of bias which may affect the credibility of a witness, and is competent on cross-examination for the purpose of show-

ing such bias. Villaroman v. United States, 87 U.S.App.D.C. 240, 184 F.2d 261, 21 A.L.R.2d 1074; Ewing v. United States, 77 U.S.App.D.C. 14, 135 F.2d 633. It has been consistently held, however, that the manner, extent and scope of the cross-examination of a witness in respect to an appropriate subject of inquiry rests very largely in the sound discretion of the trial court, and that the action of the court in respect thereto is not ground for reversal of the judgment except where abuse of discretion is clearly shown. District of Columbia v. Clawans, 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843; Summit Drilling Corp. v. C. I. R., 10 Cir., 160 F.2d 703; Dickson v. United States, 10 Cir., 182 F.2d 131. Here, it was brought out on cross-examination that the petitioner's sister had sustained a broken jaw, a broken arm and many other injuries in the accident, and that she had filed an action against the respondent seeking damages therefor. By this testimony, the jury was certainly apprised of the fact that the witness might have an interest in the outcome of this action. Having shown such interest, we do not think the trial court abused its discretionary power by thus eliminating the cross-examination.

The respondent qualified Donald P. Marcus, Production Engineer for Thompson Products Company (manufacturer of the tie rods used by respondent), and Alvin T. Hansen, a metallurgist with Chrysler Corporation, as expert witnesses and relied principally upon their testimony to establish its non-liability. A number of the evidentiary rulings complained of by respondent pertain to the testimony of these two witnesses.

Witness Marcus was asked by the respondent if he had, since arriving in Oklahoma City, located the Kanatser Dodge and made an inspection thereof on a hoist at the Denison Motor Company, and he stated that he had. Petitioner objected for the reason that she had not been notified or given an opportunity to be present at the time of such inspection. The objection was sustained, and respondent complains of this ruling, stating in the brief that its witness was "about to testify that he found a dent on the front of the frame against

which the tie rod was bent and broken." We do not know of any rule requiring a party or his representative to be present when an expert witness for the adverse party is examining objects or places which are the subjects of litigation. But, even so, there was no proffer of proof to show that when the inspection was made, nearly two years after the date of the accident, the car was in the same condition as it was immediately after the accident, or for that matter what the witness would testify he found from the inspection. The record does not support the statement in respondent's brief. Certainly the testimony would not be competent until it was first shown that the car was in the same condition when inspected as it was immediately after the accident. To be sure, it is incumbent upon the respondent to show the competency of the excluded testimony as a basis for reversible error. From the record before us, we cannot so determine.

Witness Hansen testified for Chrysler that shortly after the accident he was given a piece of the tie rod from the Kanatser Dodge and asked to determine the nature of the "failure" which occurred; that he sent the tie rod to the laboratory for certain tests and upon its return had written a report, based upon the laboratory findings and his own personal observations. He was then asked to state his conclusions. Thereupon, the witness, without objection from petitioner, went into great detail as to the manner in which he examined the tie rod and the indications of such examination. After considerable testimony in this respect, the court interrupted the witness, stating:

"* * * it seems to me, as I understand the rule of law, when you have an expert witness, you just give him a hypothetical question and ask him what his opinion is, and then if the other side wants to cross-examine him, they can. But it is not proper to have him build up his testimony by going into all the ramifications of his mind which are likely not to be understood by the jury. Now this is an expert witness and I am willing and it is proper for you to ask him what his opinion is, but as to all this other, I think it is improper and immaterial."

Respondent urges that this ruling was not only erroneous as a matter of law, but was also calculated to discredit Hansen's testimony before the jury. If the trial court had stricken Hansen's testimony as to his own observations or refused to permit a conclusion based thereon, there would be some merit to respondent's contention, for a witness is not barred from giving testimony as to actual facts he observed merely because he has been qualified as an expert witness. His conclusions as an expert may be based upon both personal observations and hypothetical data. Skelly Oil Co. v. Harrell, 187 Okl. 412, 103 P.2d 88; Seymour v. Kelso, 136 Kan. 543, 16 P.2d 958; 58 Amer.Jur. Witnesses, Sec. 836. The above quoted and criticized statement of the court may contain an erroneous statement in respect to the permissible scope of an expert witness' testimony, but it did not have the effect of excluding any of Hansen's testimony, either as to facts, observations or conclusions. At most it amounted to an expression on the part of the court as to the effect or weight of the testimony and was intended to confine the opinion evidence within the bounds of the facts. In any event, we cannot say that it was prejudicial error.

The respondent also contends that it was prejudicially limited to one witness in proving facts material to its defense, while petitioner was permitted to parade a number of witnesses to the stand in an attempt to establish its alleged liability. This contention is based upon the court's refusal to permit witness Hansen to testify concerning certain experiments made after the accident, in which tie rods were manually broken and the results of such experiments.

When the accident occurred the left front wheel of the Kanatser Dodge locked under the rear wheel of the automobile with which it collided, and was torn from the hub. One of the theories advanced by respondent in its defense, was that the tie rod was broken by the stress and strain placed thereon when the accident occurred. To

prove this theory, the respondent prior to trial, duplicated as nearly as possible the conditions existing at the time of the accident and manually broke many tie rods in an attempt to show a similar break. Witness Marcus testified at great length as to these experiments and the results. He admitted on cross-examination that it would have been impossible to break tie rods under identical conditions existing at the time of the accident; that in the experiments some of the rods broke and some could not be broken at all. When respondent began to question its witness Hansen about the same experiments, petitioner objected on the ground that she was not present at such experiments, but admitted for the record that the witness' testimony would be the same as that of witness Marcus, already in evidence.

■ In refusing to let Hansen testify further in respect to the experiments, the court stated that from the many broken tie rods which had been introduced in evidence and the testimony of Marcus, it was of the opinion that there was sufficient evidence before the jury for it to understand this theory of the respondent as to how the tie rod in the Kanatser automobile was broken. Hansen had already testified that in his opinion the tie rod in controversy was not defective when the Dodge was sold and delivered to the petitioner, and that the break in the tie rod was caused by the accident. The record contains some thirty pages of Hansen's testimony on these points. The admission and exclusion of evidence being largely within the province of the trial judge, we cannot say that the exclusion of further testimony in respect to the experiments was so manifestly unjust as to amount to an abuse of discretion, especially in view of petitioner's concession that Hansen's testimony would be the same as that of a preceding witness.

■ A further assignment of error is that the respondent was denied a fair and impartial trial because of statements of the court in the jury's presence, derogatory to its witnesses and evidence. After petitioner's mechanic Freeney finished testifying concerning his inspection of the wrecked Dodge and the broken tie rod, counsel for petitioner asked the court if the witness could be excused for the purpose of returning to his home in Florida. The court then requested Freeney to remain, stating that after respondent's experts testified he might want to examine Freeney for "this is a little technical and I would like to find out about it from a practical man." The respondent does not, and cannot, deny the right of the court to retain a witness throughout the trial, but it does contend that from the court's statements the jury could only conclude that the court was expressing its approval of Freeney as a witness and its doubt as to the competency and veracity of those witnesses which respondent might produce. We do not think the reasons given by the court for retaining Freeney are susceptible of the meaning urged, and they certainly are not sufficient basis for the granting of a new trial.

■ When witness Marcus, Production Engineer for Thompson Products, was on the stand he was asked by the respondent to describe the manner in which Thompson manufactured tie rods. In sustaining an objection to this testimony the court stated that "It seems to me the question is, given this piece of tubing, was it or was it not partially broken at the time this car was sold? * * * and along this line of testimony that is the only question that remains, it seems to me." Respondent contends that the court's statement that the only question was whether the tie rod was partially broken at the time the car was sold, was to erroneously tell the jury that defendant was an insurer, and that if the rod was fractured when the car was sold, it was liable regardless of the care exercised in the matter. The petitioner's theory was that the tie rod became defective when it was "threaded in," and it thus admitted that the tubing was properly manufactured up to that point. The comment of the court was to keep the testimony in line with the issues and even if the jury could have possibly inferred from such statement that the respondent was an insurer, any such impression was undoubtedly corrected by the court's instructions.

▉ While witness Hansen was on the stand there was considerable colloquy between court and counsel in which the court expressed its opinion concerning the weight it would give to the testimony of expert witnesses. But, this commentary occurred outside the presence of the jury and it could not have been influenced thereby. When the court came to instruct the jury on the weight it should give to expert testimony, it told them that testimony of an expert, like the testimony of any other witness, was to be given such weight as the jury thought it was properly entitled to, having in mind the specialized training of the witness, but that the jury was not bound or concluded by it. They were told to determine the facts from all the testimony, in the light of their common sense. We think this instruction correctly stated the law.

▉ Respondent further complains of the instructions of the court in which it favorably commented upon the petitioner's expert testimony and of the refusal of the court to give certain requested instructions. The conclusive answer is, that the exceptions having been taken after the jury had retired to deliberate upon its verdict, they came too late to form the basis for assignment of error. Rule 51, Federal Rules of Civil Procedure, 28 U.S.C.A.; Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439; Dommer v. Pennsylvania Ry. Co., 7 Cir., 156 F. 2d 716; Garden City Co. v. Burden, 10 Cir., 186 F.2d 651; Smith v. Welch, 10 Cir., 189 F.2d 832. And, there is nothing in the instructions to justify our independent notice of them in the interest of justice. Smith v. Welch, supra.

It follows that the order granting the new trial cannot be sustained on any asserted basis, and the judgment of November 3, 1950, based on the jury verdict, is therefore reinstated.

BRATTON, Circuit Judge (dissenting).

Unable to concur in the conclusion of the majority that the action of the district court in granting a new trial should be reviewed on certiorari, I note without extended discussion the grounds of my dissent.

It is well settled that under section 1651 of the Judicial Code, 28 U.S.C. § 1651, this court has jurisdiction to issue writs of certiorari, mandamus, and prohibition. These writs are issued or withheld in the sound judicial discretion of the court, and they are usually denied where another adequate remedy is available. The traditional use of the writs has been in appropriate cases to confine the district courts to the exercise of their prescribed jurisdiction, or to compel them to exert their authority when it is their duty to do so. Ex parte Republic of Peru, 318 U.S. 578, 63 S.Ct. 793, 87 L.Ed. 1014; Roche v. Evaporated Milk Association, 319 U.S. 21, 63 S.Ct. 938, 87 L.Ed. 1185; United States Alkali Export Association v. United States, 325 U.S. 196, 65 S.Ct. 1120, 89 L.Ed. 1554. But it is not the function of the writ of certiorari to correct every error occurring in a cause in the district court. Ordinarily, if an asserted error may be corrected on appeal from a final judgment, it cannot be reviewed on certiorari even though hardship may arise out of the delay. Mere delay which causes hardship does not necessarily justify resort to certiorari as a means of review even of a jurisdictional question which is reviewable in the regular course of appeal from a final judgment. It is only in an extraordinary situation that action of the district court should be reviewed on certiorari rather than on appeal. United States Alkali Export Association v. United States, supra.

No extraordinary situation is presented which justifies review of this case on certiorari. The district court has granted one new trial, no more. And if that action constituted error it could be reviewed and corrected on appeal from a final judgment hereafter entered following a subsequent trial. That remedy is available in such a situation and ordinarily it is adequate. Marshall's U. S. Auto Supply v. Cashman, 10 Cir., 111 F.2d 140, certiorari denied 311 U.S. 667, 61 S.Ct. 26, 85 L.Ed. 428.

In connection with the granting of the new trial, the court stated in substance that under no circumstances would it permit to stand a verdict for plaintiff in excess of $15,000. But no subsequent new trial has

been granted on the ground of excessiveness of the verdict and it cannot be forecast with certainty that in the future a verdict will be vacated and a new trial granted on such ground. In the event of another trial the verdict might be for less than $15,000, or it might be in favor of the defendant. In the event of another trial and the return of a verdict for plaintiff exceeding $15,000, the trial judge might then view differently the question of excessiveness. And in the mutation of time and events another judge might preside at a subsequent trial if one should be had. These are recognized contingencies, uncertainties, and imponderables which inhere in the situation before us. If subsequent verdicts—one after another—should be set aside on the ground of excessiveness, a different question might easily be presented. But no condition of that kind exists at the present juncture of the case. The mere granting of a single new trial on the ground of excessiveness of the verdict, coupled with the statement of the presiding judge that under no circumstances would he allow to stand a verdict for plaintiff in excess of $15,000 is not enough to warrant review on certiorari.

### On Rehearing.

In its supplemental brief in opposition to the writ of certiorari, respondent contended that the notation on the docket of the court under date of November 3, 1950, did not constitute a judgment, and there being no other entry, no judgment was ever formally entered and the court therefore had jurisdiction to order a new trial on its own motion at any time. In our opinion, we treated the notation on the Clerk's docket under date of November 3, 1950, as the entry of the judgment of the court on the verdict of the jury, and our conclusions with respect to the power of the court to grant a new trial on its own initiative is based on that postulate. While we are certain of our ground in that regard, inasmuch as the respondent has expressed disappointment with our failure to elaborate, and since the question is of fundamental importance, we will briefly state the basis for our decision.

Rule 58, F.R.C.P. provides in material part that "Unless the court otherwise directs * * *, judgment upon the verdict of a jury shall be entered forthwith by the clerk * * *. The notation of a judgment in the civil docket as provided by Rule 79 (a) constitutes the entry of the judgment; and the judgment is not effective before such entry." Rule 79(a), F.R.C.P. provides that " * * * The clerk shall keep a book known as 'civil docket' * * * " and that "All papers * * * orders, verdicts, and judgments shall be noted chronologically in the civil docket on the folio assigned to the action and shall be marked with its file number. These notations shall be brief but shall show the nature of each paper filed or writ issued and the substance of each order or judgment of the court and of the returns showing execution of process."

Rule VII of the Supplemental Rules of Civil Procedure of the United States District Court for the Western District of Oklahoma provides: "(b) Judgments by the clerk—In the following instances, judgments may be entered forthwith by the clerk without further direction from the judge: (1) Judgments on the verdict of a jury in the circumstances specified by Rule 58, Federal Rules of Civil Procedure, unless the court directs otherwise."

In compliance with these rules, the clerk's minutes in this case, attached as Exhibit A to the application for leave to file a writ in the nature of certiorari, briefly recite the trial proceedings leading up to the submission of the case to the jury, and the return of the jury's verdict in the sum of $33,-283.00, followed by the jury foreman's name in parentheses. Then the notation significantly recites: "verdict ordered filed and jury discharged from further consideration of the case. Judgment entered on verdict and counsel for the plaintiff directed to prepare J. E. accordingly." The "journal entry", dated more than six months after the foregoing entry, sets out the verdict of the jury signed by the foreman, and then recites: "Whereupon the court immediately on the 3rd day of November 1950, ordered the clerk to spread the verdict of record and enter judgment thereon, and thereafter within ten days, the defendant having filed its motion for entry of judgment in favor of the defendant, or in the alternative for a

new trial." And then the journal entry goes on to recite that "the verdict and judgment spread of record here on the 3rd day of November 1950 be set aside and the defendant's motion for new trial is granted * * *."

In Lucas v. Western Casualty & Surety Co., 10 Cir., 176 F.2d 506, 507, the clerk made the following entry under date of October 25, 1948: "Enter record of trial before the Court. Counsel stipulate all facts. Judgment entered favor deft., T. M. Lucas, in sum of $383.50 for sums earned and denied as to unearned amounts. Counsel directed to exchange briefs, and further trial continued to November 15, 1948, 9:30 A.M." On December 20, 1948, the trial court entered a written judgment, approved by the parties, reciting that the cause came on for hearing October 25, 1948, and that counsel presented a stipulation of facts to the court. The court went on to find that Lucas was entitled to $383.50, but not entitled to recover the additional $1,250.00. The judgment awarded Lucas $383.50 and costs of the action. Lucas filed a notice of appeal two days later on December 22, 1948. The appellee filed a motion to dismiss on the ground that the notice of appeal was not filed in time, the contention being that the judgment was entered on October 25, 1948. After reviewing Rules 79 and 58 and the Supplemental Rules of the District Court for the Western District of Oklahoma, we held that the entry of the judgment was not made until directed by the trial judge on December 20, 1948, because it was not the kind of a judgment to be entered by the clerk as contemplated by applicable rules; and for the further reason that the entry by the clerk in the civil docket recited that counsel was directed to file briefs and the trial was continued until November 15, 1948 "plainly showing that the court did not intend a final disposition on October 25, 1948."

In Willoughby v. Sinclair Oil & Gas Co., 10 Cir., 188 F.2d 902, 903, the clerk's minutes, entered July 31, 1950, recited that the motion to remand was overruled and exception allowed, and the "Plaintiff and her counsel enjoined from proceeding further in the state court." The order signed by the court three days later recited that "the court, upon consideration, is of the opinion that an injunction against further proceedings in state court is unnecessary at this time. The order granting an injunction entered at the hearing is therefore set aside." The appellee there contended that the order of July 31, from which the appeal was taken, was not appealable because never entered, and if so, it was set aside when the order on the motion to remand was finally signed and filed. Sustaining the finality and appealability of the order, we drew a distinction between this case and the Lucas case, on the grounds that unlike the Lucas case, the order appealed from was entered by an appropriate notation on the docket at the direction of the court, and was therefore effective as of the date of its entry on July 31, 1950.

These cases are demonstrative of the difference between the mere rendition or announcement of what a judgment will be on the one hand, and its controlling entry in the clerk's docket on the other. See also Wilkins v. Couch, D.C., 10 F.R.D. 532. Thus, where the trial court files a memorandum of its views indicating what its judgment will be, there is no final judgment until it is formally entered by the clerk at the court's direction. See Uhl v. Dalton, 9 Cir., 151 F.2d 502; Wright v. Gibson, 9 Cir., 128 F.2d 865.

Here, however, a formal judgment was entered on the verdict of the jury, and it was entered by the clerk in conformity with Rule 79(a), F.R.C.P., as required by Rule 58, F.R.C.P. and Rule VII of the District Court. Indeed, the parties treated the notation as the entry of judgment. The respondent filed a timely motion for new trial within ten days as required by Rule 59(b), F.R.C.P., and when the court came to grant a new trial, it specifically recited the entry of judgment on the jury verdict, and ordered the same set aside before granting a new trial. This recital removes any doubt of the intention of the court to have the clerk enter judgment on the jury verdict in accordance with applicable rules.

The petition for rehearing is denied.

BRATTON, Circuit Judge (dissenting).

I adhere to the view expressed in my original dissent that this case should not be reviewed on certiorari.