**DAIFLON, INC., Petitioner,**

v.

**The Honorable Luther BOHANON, Judge of the United States District Court for the Western District of Oklahoma, Respondent.**

No. 79–1459.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Oct. 9, 1979.

Decided Dec. 21, 1979.

Rehearing Denied March 5, 1980.

B. Hayden Crawford, Tulsa, Okl. (Joel L. Wohlgemuth of Prichard, Norman & Wohlgemuth, Tulsa, Okl., and Frank Gregory, Tulsa, Okl., on the brief), for petitioner.

John S. Athens and Douglas L. Inhofe of Conner, Winters, Ballaine, Barry & McGowen, Tulsa, Okl., for defendant Allied Chemical Corp.

Herbert Dym of Covington & Burling, Washington, D.C. (Coleman Hayes of Monnet, Hayes, Bullis, Thompson & Edwards, Oklahoma City, Okl., and John P. Rupp of Covington & Burling, Washington, D.C., on the brief), for defendant E. I. du Pont de Nemours and Co.

James M. Sturdivant and Sidney G. Dunagan of Gable, Gotwals, Rubin, Fox, Johnson & Baker, Tulsa, Okl., for defendants Kaiser Aluminum & Chemical Sales, Inc., and Kaiser Aluminum & Chemical Corp.

Peter B. Bradford of McAfee, Taft, Mark, Bond, Rucks & Woodruff, Oklahoma City, Okl., and Henry Kolowrat of Dechert, Price & Rhoads, Philadelphia, Pa., for defendant Pennwalt Corp.

J. L. Weigand, Jr. of Curfman, Harris & Weigand, Wichita, Kan., for defendant Racon Inc.

D. Kent Meyers of Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, Okl., for defendant Union Carbide Corp.

Before McWILLIAMS, BREITENSTEIN and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

These are proceedings in which Daiflon seeks review of an order of the district court granting a new trial in an antitrust case which had been tried to a jury. Daiflon prevailed in that case and recovered a judgment in the amount of $2.5 million actual damages. Daiflon moved the court to treble this amount. The court simply ordered entry of judgment for $2.5 million. The trial court granted a new trial on all of the issues. *See* Exhibit A. Daiflon seeks to prohibit further proceedings except as the same are necessary in order to enter judgment on the verdict including treble damages, and to determine and assess the costs against the defendants, including attorneys' fees.

The remedy here sought is pursuant to extraordinary writ, 28 U.S.C. § 1651(a) and Fed.R.App.P. 21. Daiflon contends that the trial court's new trial order exemplified an erroneous practice likely to recur. It calls attention to the fact that the trial judge, the Honorable Luther Bohanon, had previously dismissed this case for a trivial reason which necessitated a reversal by this court. In that instance the judge entered an order of dismissal with prejudice for failure of Daiflon to answer one discovery question. This order was vacated and the cause was reinstated by this court. *See Daiflon v. Allied Chemical Corp.*, 534 F.2d 221 (10th Cir.), *cert. denied* 429 U.S. 886, 97 S.Ct. 239, 50 L.Ed.2d 168 (1976). In essence, the petitioner contends that the trial judge has a misconception of the scope and extent of trial court's authority to grant a new trial. Daiflon's position appears to be that the judge acted on the premise that the trial court's discretion is virtually unlimited, and that because of this there exists a likelihood that there will be a repetition of the present result.

■ To obtain relief Daiflon must, of course, demonstrate that its right is clear and indisputable. *See Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 662, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978); *State Farm Mutual Automobile Ins. Co. v. Scholes*, 601 F.2d 1151, 1154 (10th Cir. 1979). Daiflon is required to show that the order was not only erroneous under normal standards of appellate review, but also that the ruling is so extraordinary as to evidence arbitrariness and a clear abuse of discretion.

The record here is a special one which was prepared by counsel on order of this court once it had been decided that the case should be reviewed at least to some extent. There was no transcript filed so the parties were ordered to prepare simultaneous summaries of the evidence which had been presented by each side at the trial. This was to have been in lieu of a transcript.[1] Petitioner followed the directions of the court fully. It presented a 160-page document which was fully referenced, and which complied in every detail with the court's order. It was not required to summarize the defendants' testimony at the trial and so it did not do so, with the possible exception of presenting evidence in some instances that had been brought out by Daiflon on cross-examination of defendants' witnesses. The petitioner had a right to assume that the defendants would present in summarized form the testimony of their own witnesses. The defendants' statement was relatively brief and had an argumentative tone and sought to answer petitioner's reply brief. Essentially, it was a brief and argument. Only the testimony of one witness

---

1. The pertinent part of our order noted that the court lacked a transcript of the evidence. In view of that, the parties were directed as follows:

> Accordingly, the parties are directed, in lieu of a transcript of the evidence, to prepare and sign a narrative statement of the case along the lines provided in Rule 10(d) of

the Rules of Appellate Procedure. Each side shall prepare a summary of the evidence presented by it at the trial. These summaries shall be simultaneously prepared and shall be simultaneously submitted on or before September 11, 1979.

It was thus plain that an argumentative brief was not being sought.

was summarized, and that was not fully presented.[2]

The facts can be stated briefly. From 1969 to 1972, Daiflon had engaged in the business of importing refrigerant gas from Japan. The gas was repackaged by Daiflon and resold to both wholesalers and retail contractors and servicemen in the non-automotive air conditioning industry. This suit was commenced on July 12, 1972, seven years prior to the instant proceedings. The suit was brought under the Sherman Act, §§ 1 and 2, in the United States District Court for the Western District of Oklahoma. The defendants named were E. I. du Pont de Nemours & Co., Allied Chemical Corp., Kaiser Aluminum & Chemical Corp., Pennwalt Corp., Racon, Inc., and Union Carbide Corp., all of which manufactured refrigerant gas. In the suit it was alleged that the defendants had engaged in an unlawful price-fixing conspiracy, the object of which was to exclude Daiflon from the market. A further allegation was that defendants conspired to monopolize the market and that du Pont had engaged in monopolization through predatory pricing and disparagement of Daiflon's products. There was testimony presented at the trial that each of the defendants reduced their selling prices for refrigerant gas in March 1971 by 13%, and that the defendants had further reduced the selling prices of two grades of refrigerant gas in March 1972. Daiflon ceased doing business in October 1972. After the cessation of its business, defendants increased their prices to the pre-March 1971 level.

There was testimony that du Pont had approximately 45% of the market; Allied Chemical had approximately 18–20%; Union Carbide, 12–14%; Pennwalt, 8–9%; Kaiser, 7–8%; and Racon, 2%. Daiflon sold its refrigerant gas in 31 states, although its share of the market was estimated to be .5% prior to the price lowering of the defendants. There does not appear to be any quality difference in this product.

Daiflon's sales were shown to have increased after it was formed in 1969 until June 1971, at which time the price decrease of the defendants was felt and the sales of Daiflon reduced from $160,000 to $10,000 in one month. Following this, Daiflon was ordered by its bank to liquidate.

In August 1971, the President imposed a ten percent surcharge on all imported goods and thereby increased the duty on refrigerant gas from six to sixteen percent. This continued in effect until December 1971, at which time the dollar was devalued against the yen. Daiflon did not import refrigerant gas from Japan after August 1971, but sold it out of its inventory. The defendants maintained that Daiflon's failure was due to the imposition of the import surcharge and to problems in Daiflon's operations, and was not due to the defendants' actions. This was undoubtedly one of the primary fact issues submitted to the jury.

After trial, the trial court denied the defendants' motion for judgment notwithstanding the verdict. The judge did not formally vacate the judgment entered in favor of Daiflon on April 9 in conjunction with the grant of the new trial. No doubt this was oversight. The defendants have nevertheless filed a notice of appeal from the judgment and also from the denial of their motion for judgment notwithstanding the verdict.

It would appear from reading the transcribed oral ruling of the judge that the trial court's dissatisfaction was on the basis that the *damages* were excessive and was on the further ground that he had erred in the admission of unidentified exhibits.

The trial court's main disagreement was with the amount of the verdict. The judge stated in connection with the new trial order that the amount of the award shocked him, and the indications were that he would have been even more shocked had he ordered the trebling of the damages. The judge had much less to say about the jury's conclusion that the defendants were liable

---

**2.** It did not present a summary of the evidence presented by defendants as called for. To the present day we are in the dark as to the identi-

ty of the defendants' witnesses and the testimony which was given by them.

under the antitrust laws. The main complaint here was that there was not enough time and effort given to determining the authenticity of the documents that were received in evidence, and he expressed a determination to consider them with much greater care on retrial. At the same time he did not point out any single document or group of documents which should not have been received.

## DISCUSSION OF THE ISSUES

The primary question in the case is whether, in view of the fact that final judgment or final order is not from a practical standpoint present in the record, and hence there is not an adequate remedy at law, an extraordinary writ can be employed to review the validity of the order of the trial court granting a new trial.

In our opinion the trial court merely overlooked formal vacating of the judgment, and therefore we must assume that this intended object was carried out since the new trial was ordered.

The defendants take the position that there is *no* remedy under an extraordinary writ. The only possibilities, according to them, are, first, to grant their motion for judgment notwithstanding the verdict, or, second, to retry the case. Defendants do not give recognition to possible use of the writ on the basis of "a clear abuse of discretion, an abdication of the judicial function, or the usurpation of judicial power." *Paramount Film Distributing Corp. v. Civic Center Theater, Inc.*, 333 F.2d 358, 361 (10th Cir. 1964), *citing La Buy v. Howes Leather Co.*, 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957). The truth is that the extraordinary remedy route is limited, but it cannot be said to be nonexistent.

We take note of the fact that there has been no certification pursuant to 28 U.S.C. § 1292(b). This interlocutory appeal procedure was not a viable possibility. Defendants suggest that Daiflon should have sought to oust the judge by means of §§ 144 and 455 of the Judicial Code on the basis of an affidavit that he was biased and prejudiced. This procedure has not been pursued by the petitioner as of the present time at least, and there is nothing in the record which indicates that such a course had been contemplated.

■ It goes without saying that an orthodox appeal pursuant to § 1291 of the Judicial Code is not a possibility because, as indicated above, there is no final judgment or final order which could support an appeal. The grant of a new trial is not a final judgment.[3]

A valid basis for obtaining appellate review is somewhat elusive. Thus, this is not a question of the trial court's acting beyond its *jurisdiction*. This is a recognized exception to the final judgment rule.[4] What we are confronted with is a request for extraordinary review questioning whether there has been a clear abuse of discretion in granting the new trial. So, the lack of jurisdiction remedy is out.

There is a concept of finality which had a practical and nontechnical construction.[5] It is, however, no longer a viable theory. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). The concept of piecemeal review has rendered the death knell threat practically ineffectual.

## GENERAL ISSUANCE OF A WRIT OF MANDAMUS AS AN INSTRUMENT OF APPELLATE REVIEW

The only remaining alternative is therefore whether there is some inherent basis to be found within the four corners of the writ of mandamus. We proceed to that inquiry.

---

3. *See Kanatser v. Chrysler Corp.*, 199 F.2d 610, 615 (10th Cir. 1952), *cert. denied* 344 U.S. 921, 73 S.Ct. 388, 97 L.Ed. 710 (1953).

4. *Demeretz v. Daniels Motor Freight, Inc.*, 307 F.2d 469 (3d Cir. 1962).

5. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 171, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 153, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964).

The relevant statute, 28 U.S.C. § 1651(a), is not itself narrow and restrictive. It provides:

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

So, then, it is a question whether the circumstances here are agreeable to the usages and principles of law.

Perhaps the area which offers a possibility for review is supervisory use of the writ of mandamus in accordance with *La Buy v. Howes Leather Co.*, 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957), and *Schlagenhauf v. Holder*, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964). *See generally* 16 C. Wright, A. Miller, E. Cooper, E. Gressman, Federal Practice & Procedure § 3934 (1977); Note, *Supervisory and Advisory Mandamus under the All Writs Act*, 86 Harv.L.Rev. 595 (1973). The supervisory aspect of mandamus has indeed been used in order to review the granting of a new trial.[6] However, the decisions reveal great reluctance to employ it even for the purpose of supervision.[7]

■ Little encouragement for use of writs is to be derived from the Supreme Court decisions even for supervisory purposes, although the Supreme Court has approved its use to review interlocutory orders where the judge being supervised has "displayed a persistent disregard of the [Federal] Rules of Civil Procedure" so as to justify exercising supervisory authority to control his conduct,[8] or to confine the trial court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so. *See*

*Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 63 S.Ct. 938, 87 L.Ed. 1185 (1943). *Roche* emphasized that mandamus is to be used to aid appellate jurisdiction by removal of obstacles to an appeal but not as a substitute for the appeal procedure prescribed in § 1291. Of course there must be no adequate means at law for gaining review.[9] The petitioner has the burden of showing that his right to the writ is "clear and indisputable."[10]

Hardship and inconvenience standing alone are, of course, insufficient under the *Roche* doctrine. This is not to say that cost and inconvenience to the petitioner involved in retrying the case, repreparing it and rediscovering evidence are not entitled to any consideration, but these burdens must be in conjunction with misuse of process or authority in order to outweigh the roadblock based upon the policy of avoiding piecemeal review.[11] In *Bankers Life & Casualty Co. v. Holland*, 349 U.S. 379, 383, 74 S.Ct. 145, 98 L.Ed. 106 (1953), it was emphasized that the review that is possible pursuant to extraordinary writs is to be used only in exceptional cases involving a clear abuse of discretion or usurpation of judicial power. The Supreme Court there refused to review by extraordinary writ.

In *La Buy v. Howes Leather Co.*, 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957), the holding condemned the surrender by the district court of the power to try the case before it. The use of an unsupervised master to carry out the entire trial was condemned. The abdication by the judge of his official function was held to be a clear abuse of discretion. The recognition given to the scope of the writ in *La Buy* and in the Supreme Court's decision in *Schlagen-*

---

6. *Grace Lines, Inc. v. Motley*, 439 F.2d 1028 (2d Cir. 1971).

7. *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978).

8. *Will v. United States*, 389 U.S. 90, 96, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967); *La Buy v. Howes Leather Co., supra. See also United States v. Smith*, 331 U.S. 469, 67 S.Ct. 1330, 91 L.Ed. 1610 (1947).

9. *Kerr v. United States District Court*, 426 U.S. 394, 403, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976).

10. *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 662, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978); *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 384, 74 S.Ct. 145, 98 L.Ed. 106 (1953).

11. *United States Alkali Export Ass'n v. United States*, 325 U.S. 196, 202, 65 S.Ct. 1120, 89 L.Ed. 1554 (1945).

hauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964) (mandamus used to enforce Rule 35(a) of the Rules of Civil Procedure), do serve as guides to supervisory use of the writ.[12]  Will v. United States, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967), contained some slight enthusiasm for use of the writ.  It said that such writs may serve "a vital corrective and didactic function" in the federal judicial system.  389 U.S. at 107, 88 S.Ct. at 280.

Generally, the more recent cases tend to tighten the restrictions.  See Kerr v. United States District Court, 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976), and Will v. Calvert Fire Ins. Co., 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978).  The Will case was a plurality decision in which the main opinion was by Mr. Justice Rehnquist.  It reversed a Seventh Circuit decision granting a writ of mandamus to overturn a district court's stay of federal court proceedings pending the completion of state court litigation.  It was held that the determination as to whether to defer to state court proceedings rested in the discretion of the district court, and in such circumstances a litigant's right to the writ was not considered to be clear and indisputable.  Plain abuse of discretion or abuse of power which add up to mere erroneousness was said not to furnish a basis for interlocutory review by writ.  Justice Blackmun specially concurred in the Rehnquist opinion.  The Burger, Brennan, Marshall and Powell dissent maintained that the clear abuse of discretion standard set forth in La Buy was still a valid basis for issuance of a writ of mandamus.

■ Granted that erroneousness does not constitute a valid ground for issuance of the writ.  Nevertheless, it cannot be said that the clear abuse of discretion standard is repudiated.  So, therefore, if it is found that there is a disregard for proper procedure, or misuse of judicial power in the trial judge's conduct, this would constitute a clear abuse of discretion.

If it is found that there was plain or clear error in the judge's evaluation of the facts and that the granting of a new trial was gross or excessive to the extent that it is extraordinary, it would seem that vacating the order granting the new trial would be permissible.

## THE TENTH CIRCUIT CASES ON USE OF THE WRIT FOR REVIEW

In the Tenth Circuit the extraordinary writs have been used where there has been a clear abuse of discretion or where the right to relief is clear and indisputable.[13]

In Erie v. United States District Court, 362 F.2d 539 (10th Cir. 1963), overruled on other grounds, Liberty National Bank & Trust Co. v. Acme Tool Div., Rucker Co., 540 F.2d 1375 (10th Cir. 1976), the element of hardship to the petitioner was present.  Relief was not granted on that basis.  Usery v. Ritter, 547 F.2d 528, 532 (10th Cir. 1977), approved use of mandamus for the purpose of reviewing a district court's discovery order which had compelled the Secretary of Labor to reveal the identity of informants in an action involving violation of the equal pay provisions of the Fair Labor Standards Act.  In Bruce v. Bohanon, 436 F.2d 733 (10th Cir. 1970), cert. denied sub nom. Marathon Oil Co. v. Bruce, 403 U.S. 918, 91 S.Ct. 2227, 29 L.Ed.2d 694 (1971), a writ of mandamus was issued for the purpose of reviewing a pretrial order of the district judge which had provided that certain of the claims be tried to a jury and others to the court.  Plaintiff had filed a timely demand for jury trial on all issues.  This, of course, was a classic use of the mandamus in a supervisory way.

Usery v. Ritter, 547 F.2d 528, 532 (10th Cir. 1977); Prop-Jets, Inc. v. Chandler, 575 F.2d 1322, 1324 (10th Cir. 1978); Paramount Film Distributing Corp. v. Civic Center Theater, Inc., 333 F.2d 358, 361 (10th Cir. 1964); Pet Milk Co. v. Ritter, 323 F.2d 586, 588 (10th Cir. 1963).

12. See generally 16 C. Wright, A. Miller, E. Cooper, E. Gressman, Federal Practice & Procedure §§ 3934–35 (1977); Note, Supervisory and Advisory Mandamus under the All Writs Act, 86 Harv.L.Rev. 595 (1973).

13. State Farm Mutual Automobile Ins. Co. v. Scholes, 601 F.2d 1151, 1154 (10th Cir. 1979);

There are other instances in which our court refused to review interlocutory orders in the absence of a showing of clear abuse of discretion or abdication of judicial function. *See State Farm Mutual Automobile Ins. Co. v. Scholes*, 601 F.2d 1151 (10th Cir. 1979); *Prop-Jets, Inc. v. Chandler, supra; Paramount Film Distributing Corp. v. Civic Center Theater, Inc., supra; Pet Milk Co. v. Ritter, supra.*[14]

On only two occasions have we considered issuance of the writ in order to review the trial court's granting of a new trial. One of these was *Kanatser v. Chrysler Corp.*, 199 F.2d 610 (10th Cir. 1952). The order in that case was entered on grounds other than those contained in the motion for new trial. Also, the order granting new trial was out of time (six months). Thus, there was a question of jurisdiction as well as a question of failure to observe the procedural rules. Also, the trial court stated that it was not going to permit a verdict which exceeded $15,000 to stand. Thus, the circumstances of the *Kanatser* case displayed an arbitrariness that strongly recommended the supervisory writ. *Breckenridge Lands, Inc. v. Sabo*, 376 F.2d 840 (10th Cir. 1967), is one in which this court denied relief in the new trial situation. In that case there was a lack of any showing of judicial misconduct or clear abuse of authority.

## CONSIDERATION OF THE CASES FROM OTHER CIRCUITS IN WHICH REVIEW OF ORDERS GRANTING A NEW TRAIL WAS SOUGHT BY USE OF AN EXTRAORDINARY WRIT

From an examination of the decisions of the various circuits in which extraordinary relief was sought to review orders granting new trial, it would appear that in the majority of the cases writs were denied.[15]

In each of the cases that are cited below the court sought to find extraordinary circumstances capable of justifying issuance of the writ. In the absence of extraordinary circumstances it was held that the general principle controlled that extraordinary writs cannot be used as substitutes for the appellate process.[16]

In *General Motors Corp. v. Lord*, 488 F.2d 1096 (8th Cir. 1973), the Eighth Circuit enumerated some circumstances where review by mandamus is proper. They are as follows:

First, extraordinary circumstances may be present when the district court's order was entered without the court having jurisdiction. *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185 (1943).

Second, extraordinary circumstances may be present where the order under attack is

---

**14.** The other circumstances in which this court has ruled on the propriety of granting or denying extraordinary relief involved the more traditional function of the writ "to confine an inferior court to lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority . . . ." *Roche v. Evaporated Milk Ass'n, supra*, 319 U.S. at 26, 63 S.Ct. at 941. *E. g., Estate of Whitlock v. Commissioner*, 547 F.2d 506 (10th Cir. 1976), *cert. denied* 430 U.S. 916, 97 S.Ct. 1329, 51 L.Ed.2d 594 (1977) (mandamus issued to order Tax Court to comply with previously issued Tenth Circuit mandate); *Breckenridge Lands, Inc. v. Sabo*, 376 F.2d 840 (10th Cir. 1967) (denied writ to review new trial order entered within district court's jurisdiction); *Erie v. United States District Court*, 362 F.2d 539 (10th Cir. 1963), *overruled on other grounds, Liberty National Bank & Trust Co. v. Acme Tool Div., Rucker Co.*, 540 F.2d 1375 (10th Cir. 1976) (mandamus issued to compel district court to dismiss counterclaim filed in interpleader action); *Kanatser v. Chrysler Corp.*, 199 F.2d 610 (10th Cir. 1952), *cert.*

denied 344 U.S. 921, 73 S.Ct. 388, 97 L.Ed. 710 (1953) (granted writ to review new trial order made on grounds outside trial court's jurisdiction); *Tuggle v. Chandler*, 199 F.2d 86 (10th Cir. 1952) (extraordinary relief denied as premature).

**15.** *General Motors Corp. v. Lord*, 488 F.2d 1096 (8th Cir. 1973); *Pat Ryan & Assoc., Inc. v. Dupree*, 17 F.R.Serv.2d 192 (4th Cir. 1973) (unpublished opinion); *Thorn v. Parkland Chevrolet Co.*, 416 F.2d 95 (4th Cir. 1969); *Breckenridge Lands, Inc. v. Sabo*, 376 F.2d 840 (10th Cir. 1967); *Benton Harbor Malleable Industries v. International Union, United Automobile, Aircraft and Agricultural Implement Workers*, 355 F.2d 70 (6th Cir. 1966); *Bigart v. Goodyear Tire & Rubber Co.*, 361 F.2d 317 (2d Cir. 1966).

**16.** *General Motors Corp. v. Lord, supra*, 488 F.2d at 1099; *Benton Harbor Malleable Industries v. International Union, etc., supra*, 355 F.2d at 72–73.

characteristic of an erroneous practice which is likely to recur. *See, e. g., La Buy v. Howes Leather Co.*, 352 U.S. 249, 258, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957); Note, *Supervisory and Advisory Mandamus under the All Writs Act*, 86 *Harv.L.Rev.* 595, 610 (1973).

Third, where the order under attack presents a novel and important question in which there is a need for guidelines which would, if set forth, be useful for the resolution of similar cases. *See Schlagenhauf v. Holder*, 379 U.S. 104, 111–12, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); Note, *Supervisory and Advisory Mandamus under the All Writs Act, supra*, 86 *Harv.L.Rev.* at 618–19.

■ The Eighth Circuit recognized the obvious general rule which is that the grant of a new trial is insufficient without more to justify the use of the writ. We are, of course, constantly aware of that. The second standard set forth above, namely that of the presence of extraordinary circumstances where the order under attack is characteristic of an erroneous practice likely to recur, is the basis on which the petitioner seeks relief in the present case.

There are very few cases in which an extraordinary writ has been approved for the purpose of reviewing orders granting a new trial (only three to be exact). These are *Peterman v. Chicago, Rock Island & Pacific Railroad Co.*, 493 F.2d 88 (8th Cir. 1974), *cert. denied* 417 U.S. 947, 94 S.Ct. 3072, 41 L.Ed.2d 667 (1974); *Grace Lines, Inc. v. Motley*, 439 F.2d 1028 (2d Cir. 1971); and *Kanatser v. Chrysler Corp.*, 199 F.2d 610 (10th Cir. 1952), *cert. denied* 344 U.S. 921, 73 S.Ct. 388, 97 L.Ed. 710 (1953).

In *Peterman,* the court ordered a new trial sua sponte and did so outside of the ten-day time limitation provided in Federal Rules of Civil Procedure 59(d).

In *Kanatser,* this court ordered a new trial on grounds which were not stated in the motion six months after entry of judgment.

The third case, *Grace Lines, Inc. v. Motley, supra,* exemplifies the second extraordinary circumstance set forth in *Lord,* namely the use of supervisory mandamus. In *Grace Lines* the trial court had ordered a new trial three days after declaring a mistrial. Thus, there was misuse of the Rules of Civil Procedure which precluded the use by the defendants of Fed.R.Civ.P. 50(b) for judgment notwithstanding the verdict, which constituted a violation by the trial court of Rule 50(b). The Second Circuit determined that it was an appropriate case for review. The writ of mandamus was used to reinstate the jury verdict.

*United States v. Smith*, 331 U.S. 469, 67 S.Ct. 1330, 91 L.Ed. 1610 (1947), was relied on by the Second Circuit in *Grace Lines, Inc.* In the *Smith* case the Supreme Court held that mandamus was proper to vacate an order for new trial which was made in violation of the Federal Rules of *Criminal* Procedure.

The opinion of the Second Circuit in *Grace Lines* contains a summary of the scope of the appellate court supervisory authority under the All Writs Act. The conclusion reached was that ordinarily the order granting a new trial must await the entry of a final judgment following a new trial.[17] The Second Circuit went on to say that the purpose of the All Writs Act, 28 U.S.C. § 1651, is to allow the appellate courts to review by mandamus non-appealable interlocutory orders which would be the subject of appeal from a final judgment.

The *Grace Lines* court explained that supervisory mandamus is not to be used to authorize indiscriminate use of prerogative writs as a medium for reviewing interlocutory orders. The court concluded that "Mandamus will lie, in the sound discretion of the appellate court, where the trial court has exceeded or wrongfully refused to exercise its judicial power or has committed a clear abuse of discretion * * * * [I]n such cases the desirability of present review outweighs the policies which confine ap-

---

**17.** Unless, of course, the trial judge is dissatisfied with the verdict and orders another new trial.

peals to the review of final orders." 439 F.2d at 1031 n. 2.

It is important to notice that the cases in which relief has been granted involved errors of law rather than fact. For example, where the order for new trial was granted on the basis that damages were excessive, mandamus has been denied. *Pat Ryan & Assoc., Inc. v. Dupree,* 17 F.R.Serv.2d 192 (4th Cir. 1973). *See also Benton Harbor Malleable Industries v. International Union, etc.,* 355 F.2d 70 (6th Cir. 1966).

■ In summary, in order to grant relief an appellate court must find not only that the trial judge's grant of a new trial was erroneous, but also that the judge's conduct of the litigation was such as to raise a conclusion that the judge clearly abused his discretion and that appeal is not an adequate remedy under the circumstances.

### IS THE POSTURE OF THIS CASE SUCH THAT A WRIT SHOULD ISSUE?

■ Stated differently, does the record establish that the grant of the new trial was not only erroneous but indeed served to demonstrate such a clear abuse of trial court discretion that statutory appeal would not be an adequate remedy under the circumstances.

In our view the question whether the writ should issue and the question of entitlement to relief are intermingled. Thus, if the proof is sufficient to justify the issuance of the writ, the question whether there is entitlement to relief will have been determined.

The questions are hard and the answers are also difficult. The retrial will be even more difficult inasmuch as a new round of discovery is contemplated by the trial court. There is reason to believe that the trial judge was somewhat dissatisfied with the presentation which was made by the defendants and that he felt that this should be changed in the event of a second trial.

The judge is, of course, not in a position of advocacy and if he does hold the view (and this has to be read between the lines)

that the court should encourage the development of the defendants' case, he would be acting outside of and beyond the authority. The fact that one side was not prepared to the extent that the court felt it ought to have been is not a basis for the grant of a new trial.

The trial court's rulings and comments on defendants' motion for judgment notwithstanding the verdict and new trial are appended hereto, and these comments are cogent evidence to be considered in making the present determination. These comments of the trial judge were made on May 14, 1979, following the arguments on motion for new trial. At that time the court emphasized that it had only one object and that was to see that the parties had a fair trial. The judge proceeded to conclude that a judgment notwithstanding the verdict in accordance with the motion of the defendants could not under any circumstances be granted. The court added: "It would not fit this case at all." At the same time the judge concluded that the jury verdict had to be vacated and that a new trial had to be granted. The reasons given were, first, that counsel for the plaintiff was an exceedingly good lawyer and able to make a lot out of things that really had no importance. The court said that Mr. Crawford had the jury in the palm of his hand almost from the beginning and that the defendants were put at a great disadvantage because they did not know what the plaintiff's evidence was going to be. The court said that the defendants had opened their files completely and yet were kept in the dark as to the parts of the files that the plaintiff would select and use. The court expressed dissatisfaction with the method for passing on the authenticity of the exhibits.

The judge continued that although he had complete appreciation for the work of the jury, the jury needed to be, and apparently was not, apprised of the magnitude of the problems inasmuch as the issues were foreign to them (and perhaps beyond their comprehension). From this it was concluded that there was not a fair trial. His main reason is stated as his next point in the

informal findings, that the verdict of $2.5 million indeed was excessive inasmuch as the original capital investment was only $200,000. It should be said at this time that the trial court was not correct in this statement because the actual initial capital was $300,000 together with a very substantial line of credit amounting to approximately $500,000. The court said that the defendants had a perfect right to meet competition. At the same time the judge said that Daiflon was insignificant.

The judge went back to the damages and said: "What are the actual damages? There is nowhere it reaches two and a half million dollars." The judge was also depressed about having to treble the amount of the damages. On this he said: "Well, here is what the court is going to do. The Court grants a new trial; and we are going to have a conference where every exhibit to be used by either side will be passed on before we ever call a jury." Actually this procedure was followed in the proceedings before us, but undoubtedly from what the judge said it was not pursued to the full satisfaction of the trial court. In any event, he was looking forward to a conference for the purpose of reconsidering the admissibility of all exhibits and for the purpose of examining the depositions that are to be read to the jury. On this it should be added that this information was fully communicated to the defendants and was available to the court. It is not up to the litigants to guarantee that everybody who is interested will read this material before trial.

The trial court also mentioned that some of the exhibits which were admitted had been erroneously received. It is important to mention, however, that the judge does not specify as to which of these were improperly received and there is no way to ascertain this. He spoke of proofs of papers "in the usual course of business, a lot of them were never identified by the custodian. A lot of them were not proved. They were just thrown in evidence." The court concluded, "Well, the court is absolutely not satisfied with it. The verdict of the jury, the Court was shocked when the

verdict was read of $2,500,000 based upon the evidence before that jury, just does not justify that kind of a verdict."

It is thus apparent that it is the amount of the verdict rather than any other factor which caused the judge to enter the order for new trial. From an examination of the trial court's comments it is to be concluded that there is no rational basis furnished for granting a new trial other than the magnitude of the verdict.

As far as liability is concerned, the judge indicated his belief that it was established. If he had doubts about this, he would have granted the defendants' motion for judgment notwithstanding the verdict. This was a subject on which he was positive. He said that this would not be appropriate under any thinking or analysis. On the subject of liability, this is not a case in which the evidence to establish liability is vague and questionable. The evidence supported the conclusion that the several defendants engaged in a "buccaneering" scheme designed to eliminate the plaintiff as a contender. To be sure, Daiflon's market share was relatively small, but the price manipulation and the timing lends itself to the interpretation that elimination of Daiflon was an object of the conspiracy. Defendants lowered their prices by 13%, thus foregoing substantial profits.

None of the trial judge's comments were directed to inadequacy of the evidence to establish the conspiracy that is charged. Instead the burden of the trial court's discussion was on the magnitude of the judgment and the deficiency of evidence to support it. From the record before the court, which admittedly is not a full record, it is not clear that the evidence was insufficient to satisfy the $2.5 million verdict. However, the cases teach us that subject only to the limitation of the Seventh Amendment the trial court's discretion is most full and complete when the court is considering a factual question such as damages. *Richardson v. Communications Workers of America,* 530 F.2d 126, 129 (8th Cir.), *cert. denied*

429 U.S. 824, 97 S.Ct. 77, 50 L.Ed.2d 86 (1976); *Brown v. Richard H. Wacholz, Inc.,* 467 F.2d 18 (10th Cir. 1972).

This court is, in view of this, unwilling to vacate the trial court's determination based on possible erroneous premises which the court entertained on the damages issue, because the trial court did hear the evidence in its entirety and hence it is in a much better position to judge this issue than is an appellate court.

We take a different view, however, of the issue of the liability of the defendants, and we point out that as to this element the trial court has given no reason to indicate that the record evidence was insufficient or that the jury acted erroneously in making its determination as to liability. The trial judge offered no rational basis for invalidating the jury verdict in its entirety. He pointed out no particular error in law or in the receipt of evidence. He appeared to have ordered a new trial primarily because he was shocked at the size of the verdict. By so doing, the trial court invaded the province of the jury as the primary trier of fact, *cf. Moore v. Shultz,* 491 F.2d 294 (10th Cir.), *cert. denied* 419 U.S. 930, 95 S.Ct. 203, 42 L.Ed.2d 161 (1974), and interfered with Daiflon's right to a jury trial under the Seventh Amendment.

> [I]t has long been the rule that a trial judge should not act merely as a "13th juror" and set a verdict aside simply because he would have reached a different result had he been the trier of fact. Rather, the judge's duty is to exercise a more limited judicial discretion. . . .
> A trial judge is not to interfere with the verdict, "unless it is quite clear that the jury has reached a seriously erroneous result."

*Borras v. Sea-Land Service, Inc.,* 586 F.2d 881, 887 (1st Cir. 1978).

In summary and conclusion:

Despite the narrowness of the exception which allows appellate review on extraordinary writ of orders granting new trial, we are convinced that a case has been made here for review by supervisory mandamus on the issue of liability of the defendants to the plaintiff-petitioner. As we have stated above, we take a different view of the issue of damages, even though the trial judge went forward on some misconception as to some of the facts. The question of damages *is* one of fact, and the cases hold that the trial court has more discretion in this area than in the area of liability, which involves a question of or questions of law.

Therefore, it is our judgment, and it is so ordered, that the trial court shall restore the verdict of the jury as to liability of the defendants. The trial court shall therefore reinstate the verdict insofar as it determines the several defendants to be liable. Since we are granting a new trial as to damages, the trial court shall proceed to try that part of the case. The plaintiff should be allowed to bring to the attention of the jury all of those matters that have been previously presented on liability that would have an effect on damages. It does not appear to be necessary to re-present this evidence. Most of it can be read to the jury or the jury could be allowed to see or read exhibits.

The trial court has previously commented on the need for organizing the evidence prior to further proceedings, and we do not wish to curtail this activity, but it is our view that insofar as possible, redetermination of issues already decided should be avoided so that the actual trial shall be as simple as possible. We repeat, that evidence which is relevant and material to the issues, including that evidence which reveals the nature of the activity of the defendants which caused the damage, and on the other side that evidence of the defendants which tends to mitigate the damages, should be fully presented.

The one particular part of the evidence which Daiflon claims it was prevented from developing and which appears to be relevant is that which concerned Daiflon's plans to construct a domestic refrigerant gas

manufacturing facility. The court should carefully consider the bearing which this evidence might have on the measure of damages, and if it is shown to have relevance, it should be received. *See Wood* *Exploration & Production Co. v. Aluminum Co. of America,* 509 F.2d 784 (5th Cir. 1975).

The writ of mandamus shall therefore issue in accordance with the views set forth in the foregoing opinion.

Exhibit "A"

## IN THE DISTRICT COURT OF THE UNITED STATES

### FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAIFLON, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 72–483–B (Civil) |
| ) | |
| ALLIED CHEMICAL CORPORATION, et al, ) | |
| ) | |
| Defendants. ) | |

May 14, 1979

## COURT'S RULINGS AND COMMENT ON DEFENDANTS' MOTIONS FOR JUDGMENT N.O.V. AND FOR NEW TRIAL

BOHANON, District Judge.

THE COURT: Well, the Court concludes that counsel have concluded your arguments.

Needless to say, the Court has struggled long and with difficulty over the Court's problem. You lawyers think you have problems. I was a lawyer a long time, and you do have problems. I used to think the courts didn't have any problems. They just sat there and took care of those matters like water off of a duck; but it isn't true. You stay awake. You work. You worry.

The Court has one object and only one object, and that is to see that the parties have a fair trial. No other object, no other interest, and no other concern.

I have reviewed all of the briefs, reviewed the file, and studied and analyzed the case as the evidence came forward.

The Court has concluded that the Court cannot, under any circumstances, grant judgment NOV, it just would not fit this case at all.

The Court further concludes and holds that the Court must vacate, and does vacate, the jury verdict.

The Court must and does grant a new trial.

I say this to you, Mr. Crawford, you are an exceedingly good lawyer, and you make a lot out of things that are really not important, as I view it from this evidence; but you had this jury in the palm of your hand almost from the beginning.

The Court finds and holds that the defendants were put at a great, great disadvantage, when you march into court on the day of trial, and I believe it was on Friday, and the time before the trial the defendants were complaining about not knowing what your evidence was going to be, what your documents were going to be.

Now the Court ordered the defendants, and they worked with you in good faith, and they opened their bowels and bared their chest and you got out of their files literally hundreds of exhibits. They were kept in the dark as to which ones of these you were going to use until Friday before the trial, and then the Court made certain orders, and we started the trial with literally dozens and dozens of exhibits that were

not agreed to; and the Court had been open during all this period of time, after it came back, for the purpose of settling any issue; and the defendant came to me and said, "We are not getting this, we are not getting that out of the plaintiff, and what these exhibits are going to be."

The pretrial order was pretty plain: Everyone would know exactly what exhibits would be offered and what would not be offered.

Then the question of whether or not they were competent was never tried. We started this case with the defendant in the dark, and the Court in the dark; and the failure to get together on these exhibits put an exceedingly hard load on this Court, to say "This is in; this is out." And try the case day to day, hear the evidence, the Court gets tired just like lawyers do.

When the Court goes home at night, we can't do much more than say, "Well, I'm tired. I've got to go to sleep, get some rest for the next day's work." And that's what happened.

The Court has full and complete appreciation for the work of the jury in this case, and full regard for their stability in the solving of problems of this kind; but notwithstanding this appreciation and deep regard and concern with the work of the jury, the jury in order to do their functions must be adequately apprised of the tremendous problems. These kinds of cases are not easy cases, and particularly not easy for jurors where the issues are completely foreign to them. They don't understand about this gas business. After weeks of work they get to where they do.

The Court finds that there was not a fair trial, and this Court has a duty to see that there is a fair trial. The Court has no love for the defendants and no love for the plaintiffs in this case, but there was not a fair trial, say from beginning to end.

The Court would be less than honest if the Court let this verdict stand. The Court would be somewhat of a coward to let this verdict stand, under all of the evidence and all of the things that happened before and during the trial of the case.

Furthermore, the Court would be exceedingly lazy if he let it stand and refused to try the case again. It's a lot of work. The Court could easily say, "Well, let the verdict stand," and get out of the work; but this is not my duty. It's work. Of course it's work, but the Court must shoulder its responsibility as long as I sit on the bench.

When you consider the verdict, two and a half million dollars—when you consider that this company started out with a capital investment of $200,000 to get into a business that runs into the millions, it would be just like me going out here and saying, "I'm going to go into the oil business, and I'm going to get a block and drill a well, on $100,000."

Why, you couldn't even get started.

The $200,000 that the plaintiff had wasn't enough to really get them started into breaking into this business, as long as the defendants were concerned about their business.

The defendants had a perfect right to meet competition, and for them not to meet competition is to deny them free enterprise.

This is what they did in places, but they did it in rare places, in Alabama, Houston, maybe in Oklahoma City—some little places where they met competition, but generally Daiflon was insignificant; and the Japanese treatment by this country, the surtax, and the exchange of the dollar—this had a tremendous amount of effect upon what happened to this plaintiff.

You can consider the earnings, 1969, 1970, 1971. If you consider the earnings, 1969, 1970, 1971, there is no basis upon these earnings by the company to project that they lost $2,500,000. Their earnings during these years were insignificant to say that builds into a judgment, a verdict, of two and a half million dollars.

What are the actual damages? There is nowhere it reaches two and a half million dollars.

Now the Act provides that where you find a conspiracy, and it is operation, why, for punishment the Court adds, triples it;

but you can't say there's two and a half million dollars in damages from the years 1969, 1970 and 1971 operation.

Well, here is what the Court is going to do. The Court grants a new trial; and we are going to have a conference where every exhibit to be used by either side will be passed on before we ever call a jury.

I am going to take time. We are going to have a conference. We can't have it this month. I don't think we can have it next month. I am moving my quarters right away up to the Fifth Floor, and I'll have in the future the Circuit court room up there; but I am going to set a date and a time when it is reasonably agreeable to counsel, and we are going over every exhibit. We are going to match it with the rules of evidence, and if it is admissible, we are going to put it over here; if it is not admissible, we are going to put it over here, so to speak. These that are admissible would be admitted. There will be no argument before the jury. There will be no time delay. There will be no headaches for the Court to pass upon as to what exhibits are to be received in evidence and what are not to be received in evidence.

Those that are to be received in evidence, and the depositions that are to be reread to the jury, we will know what they are and know where we are going from the very beginning.

Now I assume that the parties may, but I am going to ask now, do the parties want any further discovery, and if so, how much time do you want for discovery, or do you want to think about it and talk to the Court about it a little later on—a period of discovery. We are going to have a fixed time for further discovery.

I think perhaps we should either pass upon the great volume of exhibits before we go into further discovery, or vice versa. I don't know which would be the best— whether the egg before the chicken or the chicken before the egg; but you've got to have some discovery.

Some of these exhibits that the Court admitted, the Court erred in it. We erred seriously, and we erred because of the pressure that was put on the Court to conduct a trial and to pass two hundred, three hundred exhibits, and the right to be admitted or not to be admitted was wholly unfair to the Court. Just not fair to the Court. I sat here in this court room. We spent two hours passing on exhibits, and by the flip of the thumb I said, "This is in" and "This is not." I didn't know what I was talking about, because whether or not these exhibits come within the pale of the rule or not, why, there is no proof to show it.

These proofs of papers in the usual course of business, a lot of them were never identified by the custodian. A lot of them were not proved. They were just thrown in evidence.

It is not every piece of paper that you get out of a defendant's file that's admissible just because it has some inference about some question.

Well, the Court is absolutely not satisfied with it. The verdict of the jury, the Court was shocked when the verdict was read of $2,500,000 based upon the evidence before that jury, just does not justify that kind of a verdict.

So does anyone have anything further to say? As quick as I can get settled down, why the Court will give you notice and we will begin shaping this case so that we can have a trial that the Court can say is and was a fair trial. The verdict may be more under new evidence than that allowed. It may be less. I don't know, don't care; but I will know in my own mind that there was a fair trial, and that these exhibits will not be a headache to the defendant, they will not be a headache to the Court. We can hear the evidence and let the jury hear the story, or the arguments and evidence on both sides.

If anyone has anything further to say, the Court will hear you. Otherwise we will take a recess until further notice through the Clerk.

(The proceedings are adjourned.)